**Walter SMITH, Jr., Petitioner,**

v.

**Lou V. BREWER, Warden of the Iowa State Penitentiary, Respondent.**

No. 76–284–2.

United States District Court, S. D. Iowa, C. D.

Jan. 17, 1978.

John C. Wellman, Polk County Offender Advocate, Des Moines, Iowa, Robert R. Rigg, Des Moines, Iowa, for petitioner.

Richard C. Turner, Atty. Gen. of Iowa, and Thomas D. McGrane, Asst. Atty. Gen., Crim. Appeals Div., Des Moines, Iowa, for respondent.

## MEMORANDUM AND ORDER

HANSON, Senior District Judge.

This matter is before the Court on the application for a writ of habeas corpus submitted by Walter Smith, Jr., pursuant to 28 U.S.C. § 2254. Smith, an inmate at the Iowa State Penitentiary, attacks his March 20, 1973 conviction for first degree murder in Polk County District Court on the grounds that jury misconduct deprived him of his Sixth Amendment rights as guaranteed by the Fourteenth Amendment to be tried by an impartial jury and to confront witnesses against him.

Subsequent to the return of the jury's guilty verdict, Smith's counsel entered a motion for a new trial on substantially the same grounds asserted in the present petition. The state trial court held a hearing on said motion on April 3, 1973. At the hearing, one of the jurors, Mrs. Ilda Elliott, testified as to the conduct of individual jurors during the approximately three days of deliberations which preceded the guilty verdict. Mrs. Elliott's testimony related almost entirely to activities which occurred within the confines of the jury room. At the conclusion of the hearing, the trial court ruled that the matters raised by Mrs. Elliott "inhere[d] in the verdict" and could not be considered as impeaching the jury's determination of guilt.

Petitioner appealed his conviction to the Supreme Court of Iowa on two grounds: (1) that the evidence was not sufficient to support a first degree murder conviction; and (2) that jury misconduct deprived him of a fair trial. The Supreme Court rejected both arguments and affirmed the conviction in an opinion filed April 14, 1976. *State v. Smith,* 240 N.W.2d 693 (Iowa 1976).

■ Petitioner has not sought any form of collateral relief prior to the submission of his petition for a writ of habeas corpus. However, in view of the fact that petitioner presents this Court with the same prior misconduct issue considered and rejected by the Supreme Court of Iowa on direct appeal, it is apparent that petitioner has exhausted his state court remedies within the meaning of 28 U.S.C. §§ 2254(b) and (c). *Wilwording v. Swenson,* 404 U.S. 249, 250, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); *Eaton v. Wyrick,* 528 F.2d 477, 479–80 (8th Cir. 1975). Accordingly, this matter is properly before the Court for federal habeas review.

■ The parties have agreed to submit this cause for decision on the basis of the record developed in the state trial court. Since there is no substantial factual dispute involved and petitioner is willing to rely on the record developed in the state courts, this Court concludes that no evidentiary hearing is warranted. *See Townsend v. Sain,* 372 U.S. 293, 312–13, 83 S.Ct. 745, 9 L.Ed.2d 770 (1962); *Franklin v. Wyrick,* 529 F.2d 79, 81 (8th Cir.), *cert. denied,* 425 U.S. 962, 96 S.Ct. 1747, 48 L.Ed.2d 208 (1976).

## I. STATEMENT OF FACTS

The jury found petitioner guilty of murder in the first degree after extensive deliberation. The circumstances surrounding the commission of the crime and the conduct of the subsequent trial are relevant to the issue of jury misconduct asserted here.

Petitioner fatally shot and killed his wife, Judy Smith, on July 21, 1972. At the time the couple were separated, though they had apparently theretofore remained on cordial terms. On the evening of July 21, a recent acquaintance of Mrs. Smith, one Keith Jackson, called at the apartment Mrs. Smith shared with another woman, Linda Brown. Present were Judy Smith, Jackson, Linda Brown and Brown's boyfriend, Jimmy Western. After listening to records and drinking wine for a period of time, the couples retired to separate bedrooms.

Shortly before the murder, petitioner had arrived at the apartment and, from a posi-

tion on the back porch, observed Jackson and petitioner's wife together, overheard them discuss going to bed, and witnessed them going into the bedroom. Angered by what he had seen, petitioner walked to his car located a block away, retrieved a gun, returned to the apartment, and shot both Jackson and his wife. Petitioner's wife was fatally wounded. Petitioner and Jackson are black as was petitioner's attorney at trial, Henry T. McKnight. Judy Smith was white.[1]

Petitioner's case was submitted to the jury on March 15, 1973 after approximately two days of trial. Though the record is not completely clear, it appears that for the final two of the approximately three days of deliberations the jurors stood eleven to one in favor of a guilty verdict. The reluctant juror was Mrs. Ilda Elliott. On March 20, 1973, Mrs. Elliott finally relented and voted guilty immediately after the testimony of Keith Jackson was read to the jurors on Mrs. Elliott's insistence. Having reached a verdict, the jurors, including Mrs. Elliott, were marshalled into the courtroom. After the reading of the verdict, the trial judge addressed the jury generally and asked whether said verdict was the verdict of all the jurors. Mrs. Elliott remained silent, thereby assenting to the unanimous verdict.

Several days after the trial, Mrs. Elliott was contacted by Mr. McKnight, trial counsel for petitioner. On Mr. McKnight's inquiry, Mrs. Elliott indicated that the other jurors had given her a "bad time" during deliberations. Petitioner subsequently filed a motion for a new trial accompanied by an affidavit of Mrs. Elliott in which she detailed the circumstances surrounding her decision to vote for a guilty verdict.

In her affidavit and testimony at the hearing on the motion for new trial, Mrs. Elliott stated that she had been subjected to intense pressure from the other eleven jurors to change her mind. After observing petitioner in a parking lot one morning, a juror later opined during deliberations that petitioner "would kill again before convicted." Another stated his belief that such a man should not be "running around among our wives and children." Mrs. Elliott was in effect told that she would be responsible if such a killing occurred. She was asked how she would feel if the victim had been her daughter. In Mrs. Elliott's words:

[R]epeatedly they screamed and they yelled, "What's wrong with you? Are you blind that you can't see the evidence on the table? And is there anything wrong in your personal love? Do you love your Bible? If you do, you know there are some things in there, some facts that you have to accept."

At one point, a juror named Burns observed, without factual elaboration, that the evidence in a prior murder trial on which he sat as a juror was not as strong as that in petitioner's case, "but we got a conviction."

Mrs. Elliott also testified to three incidents in which two jurors, Adair and Burns, made comments or engaged in conduct which Mrs. Elliott interpreted as relating to the race of petitioner and his attorney. These incidents are best retold in Mrs. Elliott's words:

First, when we were first there, the first day, Dorothy Adair had stated a couple years ago Mr. McKnight had had a case and that he had gotten down on the floor and so forth. She said antics, and she said it was—it really was quite funny. And then Mr. Burns at one point, the first point he got up and walked about the room in kind of a—well, a strutting way such as a minstrel used to do and mimics, used the black dialect to repeat some things you [Mr. McKnight] said. Then later on he laid down on the table, took off his coat. While he was doing this he was bouncing around the room, and then he again, when he laid down on the table, he used the black mimic like "you all" and that and this and, you know,—

1. Though the record is not clear on the point, petitioner asserts that all members of the jury were white.

Elliott's testimony as it related to racial overtones in the jury's deliberations was limited to that quoted above, and no claim is made that the matter of petitioner's race was brought up in connection with the facts surrounding the shooting of Judy Smith.

Mrs. Elliott had wanted to have the testimony of Keith Jackson read to the jury after the first day of deliberations, but the other jurors would not agree to her request. Eventually, Mrs. Elliott promised that if the testimony were read and if it was not as she had supposed, she would then change her vote. The testimony apparently differed in some respects from what Mrs. Elliott had recalled and, true to her word, immediately upon the return of the jurors to the jury room, Mrs. Elliott voted with the others in finding that petitioner was guilty of first degree murder.

Mrs. Elliott's affidavit and testimony before the state trial court on the motion for new trial constitute the only evidence presented to this Court with respect to the present habeas corpus petition.

## II. CONCLUSIONS OF LAW

■ At the conclusion of Mrs. Elliott's testimony on the motion for new trial, the trial judge ruled that he could not consider Mrs. Elliott's version of the jury proceedings because the matter testified to "inhere[d] in the verdict." The Iowa Supreme Court affirmed this reasoning. *State v. Smith, supra* at 696. The state courts thus applied an evidentiary rule common to both federal and state jurisprudence that "a juror may not impeach his own verdict once the jury has been discharged." *Government of the Virgin Islands v. Gereau*, 523 F.2d 140, 148 (3d Cir. 1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323

(1976). *See, e. g., McDonald v. Pless*, 238 U.S. 264, 267–69, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); *United States v. Gambina*, 564 F.2d 22, 24 (8th Cir. 1977); *Pruitt v. Hutto*, 542 F.2d 458, 460 (8th Cir. 1976); *United States v. Eagle*, 539 F.2d 1166, 1169–70 (8th Cir. 1976), *cert. denied*, 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977); *United States v. Schroeder*, 433 F.2d 846, 851 (8th Cir. 1970), *cert. denied* 401 U.S. 943, 91 S.Ct. 951, 28 L.Ed.2d 224 (1971); *State v. Berch*, 222 N.W.2d 741, 747–48 (Iowa 1974). Congress has codified the common law concept of juror incompetency in Rule 606(b) of the Federal Rules of Evidence.[2] *Eagle, supra* at 1170. These principles are, of course, as applicable to a federal court on consideration of a petition for a writ of habeas corpus as in any other type of proceeding. *See Pruitt, supra* at 458, 460; *Gafford v. Warden*, 434 F.2d 318, 320 (10th Cir. 1970).

■ There is, however, a major exception to the rule of juror incompetency, one which is also reflected in Rule 606(b). "[A] juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind." *Mattox v. United States*, 146 U.S. 140, 149, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892), *quoting Woodward v. Leavitt*, 107 Mass. 453. *See Gereau, supra* at 149; *Eagle, supra* at 1170. Though the scope of the exception is not precise, it is clear that a juror may testify as to extra-record facts introduced into the jury room, *United States, ex rel. Owen v. McMann*, 435 F.2d 813, 818 (2d Cir. 1970), *cert. denied*, 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed.2d 646 (1971), *quoting United States v. McKinney*, 429 F.2d 1019, 1023 (5th Cir. 1970), *cert. denied*, 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971), or the presence of an improper outside influ-

**2.** Rule 606(b), F.R.Evid. provides:

Upon an inquiry into the validity of a verdict or indictment, *a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations* or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except*

*that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.* Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes. (Emphasis added.)

ence on the deliberations of the jury. *Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966). The ambit of extraneous information or improper influence regarding which a juror may testify has accordingly been held to include such diverse matters as the intrusion of publicity into the jury's deliberations, *McKinney, supra*, at 1025, 1030, comments by court officers on the merits of a case, *Parker, supra* at 365, 87 S.Ct. 468, and impromptu field trips by individual jurors to ascertain independently facts not in the record, *Gafford, supra* at 319–20.

■ On the other hand, "evidence of discussions among jurors, intimidation or harassment of one juror by another, and other intrajury influences on the verdict is within the rule, rather than the exception, and is not competent to impeach a verdict." *Gereau, supra* at 150. *See Eagle, supra* at 1170. Nor is evidence competent which relates to the "thought processes and undisclosed subjective prejudices of individual jurors." *Poches v. J. J. Newberry Co.*, 549 F.2d 1166, 1169 (8th Cir. 1977).

■ In a case such as this, petitioner has a twofold burden to overcome. He must first overcome the evidentiary obstacle posed by the rule of juror incompetency and present competent evidence on grounds sufficient to overturn the verdict. If he succeeds in presenting such evidence, he must then show that any juror misconduct was prejudicial to his Sixth Amendment rights. *See Eagle, supra* at 1169–70; *Gereau, supra* at 148, 153–54. For the reasons discussed below, the Court concludes that petitioner has failed to overcome these burdens, principally because of the operation of the rule of juror incompetency. The Court will examine the evidentiary problem first, and the question of prejudice second.

■ *A. The Evidentiary Obstacle.* The only evidence offered by petitioner is the testimony of Mrs. Elliott before the state trial court in support of petitioner's motion for a new trial. Petitioner argues that this testimony establishes that the jurors "considered matters not introduced into evidence" and that the jury reached a verdict in an "impermissible manner by browbeating another juror."[3] The evidence in support of these claims may be grouped into four categories: (1) various jurors' statements which serve to illustrate the belief held by some jurors that petitioner was likely to commit future violent crime unless convicted; (2) Mrs. Elliott's recitation of the pressures brought to bear on her by other jurors; (3) evidence concerning the possible intrusion of racial considerations into the jury's deliberations; and (4) an indication that one juror compared petitioner's case with an earlier trial in which the same juror had served.

■ In the Court's judgment, Mrs. Elliott's testimony is clearly barred by the rule of juror incompetency insofar as it relates to the first and second categories noted above. Statements made by jurors in the jury room which reflect a poor opinion of a defendant's character and a belief that the defendant may be likely to commit other criminal acts are undoubtedly frequent occurrences in jury deliberations. Indeed, the opinions they reflect are part of the human element implicit in the jury system. *See e. g., McMann, supra* at 817–18; *McKinney, supra* at 1022–23. So long as jurors form their opinions about a defendant free from exposure to prejudicial extraneous information or improper outside influence of a type absent here, jurors are at

**3.** Petitioner also asserts that the verdict is tainted because several jurors allegedly bet on the outcome of the trial—a form of "justice by lot." Apparently after Mrs. Elliott obtained the other jurors' consent to a reading of Keith Jackson's testimony on condition that Mrs. Elliott vote with the majority if Jackson's testimony was not as she supposed, one juror said to another words to the effect that "I'll bet a cup of coffee she [Mrs. Elliott] renigs when she gets back into the jury room"; whereupon the other juror responded, "I'll buy coffee for all of you if she does." The Court is unable to attribute to this colloquy the sinister implication petitioner urges. Assuming Mrs. Elliott's testimony in this regard was competent, *see McDonald v. Pless*, 238 U.S. 264, 265–66, 35 S.Ct. 783, 59 L.Ed. 1300 (1915), the Court views the conversation in question as harmless and without prejudice to petitioner.

liberty to express their views free from the threat of post-verdict scrutiny by a federal court. *See McKinney, supra* at 1022–23.[4]

Mrs. Elliott's statements relative to the pressures put upon her to change her vote are similarly barred from consideration. Though Mrs. Elliott claims to have been subjected to strong pressure from other jurors, that fact constitutes neither extraneous information nor improper influence to which she could testify. *See Gereau, supra* at 149–50; *United States v. Stoppelman*, 406 F.2d 127, 133 (1st Cir.), *cert. denied*, 395 U.S. 981, 89 S.Ct. 2141, 23 L.Ed.2d 769 (1969). Furthermore, it is too late in the day to assert that Mrs. Elliott was intimidated into joining in the guilty verdict against her will. After the jury returned its verdict, Mrs. Elliott and the other jurors were asked by the trial judge whether the verdict was the decision of each member of the jury. Mrs. Elliott remained silent and thereby assented to the verdict. Under these circumstances, the opportunity for Mrs. Elliott to renounce the verdict has passed. *See Schroeder, supra* at 851.

 Petitioner claims that Mrs. Elliott's testimony shows that the jurors considered the race of petitioner and his counsel "as evidence" in reaching a verdict. The issue in this regard focuses on the conduct of juror Burns.[5] At one point, Burns "got up and walked about the room in kind of a . . . strutting away such as a minstrel used to do and mimics, used the black dialect to repeat some of the things you [Mr. McKnight—petitioner's black trial attorney] said." Later, "he laid down on the table, took off his coat. While he was doing this he was bouncing around the room . . . he used the black mimic like 'you all' and that and this . . . ." Petitioner's theory appears to be that the testimony is admissible as evidence that extraneous information relating to petitioner's race was introduced into the jury room.[6] The Court cannot agree. After careful review of the proffered evidence in light of the scope of the rule of juror incompetency and its supporting rationale, the Court has concluded that the evidence in question should be excluded.

In concluding that Mrs. Elliott's description of juror Burns' antics is not admissible, the Court is guided in part by its interpretation of Rule 606(b) of the Federal Rules of Evidence which provides:

4. One of the matters not in evidence allegedly considered by the jury was the fact that petitioner was free on bail during his trial. The Court is asked to consider this as the intrusion of extraneous information. Petitioner's argument here is bottomed on the following testimony of Mrs. Elliott:

> Q Was any statement made by one of the jurors relative to seeing the defendant at liberty?
> A Yes, sir, Mrs. Adair I think her name is, Dorothy Adair, said that she had seen him that morning in the parking lot and she was supported by Mrs. Cooper, who said, "I did, too," and to let somebody like that run around loose, and then Mr. Burns said, "We don't want anyone like him running around among our wives and children."
> Q Was anything further said about his committing another murder?
> A Yes, Mrs. Adair said, "Yes, if he was running around like this, he would kill again before convicted."

As the Court reads this exchange, the comments made by jurors Adair, Cooper, and Burns indicate no more than that they believed petitioner to be a dangerous criminal who should be convicted. As noted in the text, the

articulation of such opinions in the jury room is not subject to judicial scrutiny.

5. In discussing racial considerations in the jury's deliberations, Mrs. Elliott also sought to implicate juror Adair. Her description of Adair's conduct, however, sets forth nothing that objectively could be deemed racially oriented. Mrs. Elliott stated only that

> ". . . Dorothy Adair had stated a couple of years ago, Mr. McKnight [petitioner's black trial attorney] had had a case and that he had gotten down on the floor and so forth. She said antics, and she said it was—it really was quite funny."

Accordingly, the Court scrutinizes only Mr. Burns' conduct.

6. Petitioner does not assert that juror Burns committed misconduct by failing to disclose information on voir dire relative to any preconceived opinion about petitioner's guilt because of the latter's race. The only issue presented is impeachment of the verdict. *See Clark v. United States*, 289 U.S. 1, 17–18, 53 S.Ct. 465, 77 L.Ed. 993 (1932); *United States v. Whiting*, 538 F.2d 220, 223 (8th Cir. 1976); 3 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 606[04] (1976).

Upon an inquiry into the validity of a verdict or indictment, *a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations* or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.* Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes. (Emphasis added.)

Preliminarily, the Court would note that Rule 606(b) is fully applicable to the present action.[7] *See generally Rogers v. Meeks,* 385 F.Supp. 593, 597 (W.D.Ark.1974). Federal evidentiary rules generally govern in habeas proceedings. *See Walker v. Johnston,* 312 U.S. 275, 287, 61 S.Ct. 574, 85 L.Ed. 830 (1941); Rule 1101(e), F.R.Evid. The Court discerns nothing in the statutory provisions pertaining to habeas corpus or the Supreme Court Rules Governing Section 2254 Cases which would preclude the applicability of Rule 606(b) to the present petition. Moreover, the admissibility of Mrs. Elliott's testimony is not affected by the fact that she testified in state court and her statements are currently before this Court only on the record developed in the state courts. Rule 606(b) specifically provides: "Nor may [the juror's] *affidavit or evidence of any statement* by him concerning a matter about which he would be precluded from testifying be received for these purposes." (Emphasis added.) *See Poches, supra* at 1169.

The question of juror conduct arising within the jury room which injects a note of bias into the deliberations does not fit neatly on one side or the other of the dichotomy drawn in Rule 606(b). *See* 3 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 606[04] (1976). The problem is whether such wholly intra-jury statements can be viewed as "extraneous . . . information" or an "outside influence" and, if so, whether the proof of such statements can be separated from proof of the effect of the statements on the mental processes of the jurors. *See id.* at 606–35 to 606–36. One prominent commentator has concluded that "[g]enerally, it seems better to draw [the line] in favor of juror privacy; in the heat of juror debate all kinds of statements may be made which have little effect on outcome, though taken out of context they seem damning and absurd." *Id.* at 606–36. *See also* 8 Wigmore, *Evidence,* § 2354, at 712 (McNaughton ed. 1961).

■ A general rule favoring the inadmissibility of juror testimony to impeach a verdict on the basis of alleged biased conduct occurring within the jury room is supported both by the language of Rule 606(b) and its legislative history. The Rule prohibits testimony as to "any matter or statement," occurring in the jury room, a prohibition qualified only to the extent such a matter or statement relates to extraneous information or outside influence. Conduct such as juror Burns engaged in cannot, in the usual sense, be deemed either to impart information or reflect outside influence. This conclusion is supported by Congressional action on Rule 606(b). The rule was the subject of some controversy in the form in which it was transmitted to Congress by the Supreme Court. The House favored a less prohibitive rule that would "permit the impeachment of verdicts by inquiry into, not the mental process of the jurors, but

---

7. Rule 606(b), F.R.Evid. is applicable to all actions commenced after July 1, 1975. Act of January 2, 1975, Pub.L. No. 93–595, 88 Stat. 1296. The habeas petition herein was filed on September 3, 1976.

The question of whether Rule 606(b) literally applies in this action is not dispositive, however, as the Rule has been described as merely the codification of pre-existing common law. *United States v. Eagle,* 539 F.2d 1166, 1170 (8th Cir. 1976), *cert. denied,* 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977).

what happened in terms of conduct in the jury room." Senate Comm. on the Judiciary, 93d Cong., 2d Sess., No. 93–1277, *reprinted in Weinstein, supra* at 606–8. The House version would not have limited juror testimony to the question of extraneous information or outside influence. The Senate Judiciary Committee, on the other hand, termed this extension of the scope of impeachment "unwarranted and ill-advised." *Id.* The Senate version ultimately prevailed and the present Rule was enacted. Since Congress apparently considered and expressly rejected a version of Rule 606(b) which would have permitted juror testimony about objective matters occurring during deliberations, the Court is led to the conclusion that, in the main, the Rule was intended to preclude the kind of evidence of juror misconduct petitioner would have the Court consider with respect to juror Burns' behavior.[8]

In so saying, the Court does not suggest that the rule of juror incompetency embodied in Rule 606(b) should be applied dogmatically and in complete disregard of what is alleged to have occurred in the jury room. In *McDonald v. Pless* the Supreme Court admonished that "there might be instances in which such testimony of the juror could not be excluded without 'violating the plainest principles of justice' "—an admonition particularly pertinent in criminal cases. 238 U.S. 268–69, 35 S.Ct. 785. Where, for example, an offer of proof showed that there was a substantial likelihood that a criminal defendant was prejudiced by the influence of racial bias in the jury room, to ignore the evidence might very well offend fundamental fairness. *Cf. United States v. Booker,* 480 F.2d 1310, 1311 (7th Cir. 1973). However, this is manifestly not such a case. Though Burns' behavior brings discredit to his service as a juror, it is unlikely that it could have been prejudicial to petitioner.

Burns' conduct involved two isolated incidents which occurred during the course of approximately three days of intense deliberations. Moreover, the brief episodes Mrs. Elliott described appear unrelated to any discussion of the facts of the case by the jury. The record does not reflect, as petitioner appears to argue, that race was received or utilized by the jury in any evidentiary context. In the Court's judgment, both the intrinsic characteristics of Burns' conduct and the fact that it constituted a relatively brief distraction for the jury, mitigate against the likelihood of prejudice. *See United States v. Love,* 535 F.2d 1152, 1156 (9th Cir.), *cert. denied,* 429 U.S. 847, 97 S.Ct. 130, 50 L.Ed.2d 119 (1976).

Finally, petitioner asks the Court to consider the testimony of Mrs. Elliott insofar as it is offered to show that the jurors compared the evidence in petitioner's case with that in another murder case in which Mr. Burns had also served as a juror. To the extent the evidence may show that the jurors had an opportunity to use the facts in another case as a measuring rod for petitioner's guilt, it would appear that Mrs. Elliott's testimony relates to a question of whether extraneous information was improperly brought to the jury's attention. *See Eagle, supra* at 1170; *United States v. Peterson,* 524 F.2d 167, 176–77 (4th Cir. 1975), *cert. denied,* 424 U.S. 925, 96 S.Ct. 1136, 47 L.Ed.2d 334 (1976). *See generally, United States v. Howard,* 506 F.2d 865, 868 (5th Cir. 1975). Accordingly, the Court will consider further Mrs. Elliott's testimony in this regard. The question now becomes whether petitioner has shown prejudice.

*B. Prejudice.* Though extraneous information may have been brought to the attention of a jury, the verdict will nevertheless stand unless petitioner has shown

---

8. The Court is aware of the fact that the evidentiary rule utilized by Iowa courts is more akin to the rejected House version of Rule 606(b) than the version under which federal courts currently operate. *See State v. Jackson,* 195 N.W.2d 687, 690 (Iowa 1972). Perhaps for this reason the Supreme Court of Iowa appeared to consider the question of whether juror Burns' racially-slanted conduct prejudiced petitioner. *State v. Smith,* 240 N.W.2d 693, 696 (Iowa 1976). However, though the state evidentiary rule may be less restrictive, the instant action presents a federal constitutional question concerning which federal evidentiary rules apply.

that he was prejudiced thereby. *See Gereau, supra* at 153–54. In the present case, whether petitioner has been prejudiced turns on an analysis of the "nature of what has been infiltrated and the probability of prejudice," *McMann, supra* at 818. *See Love, supra* at 1156; *United States v. Crosby*, 294 F.2d 928, 950 (2d Cir. 1961).

 In her testimony, Mrs. Elliott stated that at one point during the deliberations juror Burns announced in the presence of the other members of the jury: "I just came off a murder case and we didn't have the evidence we have got here but we got a conviction." Petitioner asserts that Burns' statement shows that the jury considered evidence submitted in another case in convicting petitioner. This claim is somewhat extravagant. The information, if any, Burns brought to the jury's attention could have had no more than a de minimis effect. Burns' comment appears to the Court to be no more than a general qualitative comparison. An isolated, offhand remark of this nature, which draws no factual analogies between the two cases, brings little substantive extraneous information to the jury's attention and, consequently, the likelihood of prejudice is slight. *See McMann, supra* at 817. Hence, the Court concludes that petitioner was not prejudiced by the extraneous information in question.

### III. ORDER FOR JUDGMENT

For all of the reasons set forth above, it follows that the petition for a writ of habeas corpus must be denied.

Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus be denied.