SHORTESS, Judge.
Donald Lee Jacobs, II (defendant) was charged by bill of information with simple burglary and tried by a jury, which convicted him. He was sentenced to imprisonment at hard labor for a term of six years. Defendant has appealed, urging four assignments of error.[1] FACTS
On November 13, 1987, at about 10:00 a.m., Mrs. James Berthelot locked and left her home in Gonzales. About 2:45 p.m., she returned home and discovered that one of the window panes on her back door had been “broken out” and the door unlocked, apparently by someone who reached inside through the broken pane. Mrs. Berthelot went inside and immediately notified the police.
A liquor decanter containing about one hundred sixty dollars of silver dollars, quarters, nickels, pennies, and dollar bills and a blue Bank of Gonzales money bag with about three hundred dollars of two dollar bills had been taken from the home. The decanter and money bag were in the house on the morning in question when Mrs. Berthelot left. No one had been authorized by the Berthelots to enter their home and take the missing items.
On November 13, Gonzales City Police Detectives Bailey Landry and James H. Brudy, Jr., alerted local business establishments to be on the lookout for anyone using two dollar bills and/or excessive change. That same day, an employee of a convenience store (located across the street from the Berthelot’s subdivision) provided the police with a description of someone who had used a two dollar bill at his store.
Based on the description given by the employee, Gonzales Police Officer Bill Wade found Michael Stelly (a juvenile) at a nearby game room. Stelly had two two dollar bills on his person which Officer Wade seized. Wade took Stelly to the police station where Stelly gave a statement which apparently implicated defendant.
*1222 Landry and Brudy on November 16 searched a warehouse owned by defendant’s father, after obtaining consent from Mr. Jacobs. The search was prompted by information Stelly had provided. Nothing from the burglary was found.
Nicky Prejean had a business in the same industrial park as Jacobs; on November 18 one of Prejean’s employees found some change, silver dimes and possibly some quarters, scattered along the side of the road in an approximate twenty foot path about one hundred feet from Jacobs’ warehouse. Prejean notified the police; Brudy went to Prejean and was given approximately thirty-five dollars in change that Prejean and his employee had found. Defendant was arrested for burglary shortly after Brudy received the recovered coins.
On the following day, Brudy and Landry returned to Prejean’s and searched the area where Prejean and his employee had found the money. The detectives found an additional six to seven dollars in change, raising the total recovered to about forty-two dollars. The area where the coins were found had not been searched by the officers when they searched the Jacobs warehouse on November 16.
Regarding the found coins, Brudy testified “that’s correct,” when asked if it “looked like somebody had come by and spread [them] along there.” Similarly, Pre-jean and Landry each essentially testified that it appeared to them that the coins had been thrown or scattered by someone who had either driven or walked by.
During the investigation, the police found only partial and smudged palm and/or fingerprints at the crime scene; none of the prints were identifiable. Along with the recovery of the coins found near the Jacobs warehouse, the testimony of Michael Stelly, the juvenile, and Jamie Bourgeois, an eighteen-year-old, linked defendant to the crime.
Michael Stelly testified that he and defendant lived in the same subdivision as the Berthelots; that he knew the Berthelots and the location of their home; that on November 13,1987, he was walking down a sidewalk when defendant came along in a car; that he got into the car and as he did so, he noticed a blue Bank of Gonzales bag in the passenger seat and also observed “a big ole — like wine bottle” in the backseat of the car; that the bottle was empty and “looked like” a big wine bottle; that the Bank of Gonzales bag had half dollars, quarters, nickels and dimes in it; that he and defendant first went to defendant’s house in the car; that they then proceeded to a store and defendant reached into his pocket and exhibited some two dollar bills; that defendant had a “big ole” roll of two dollar bills; that he had never previously seen so many two dollar bills; that when Stelly asked defendant where he had gotten the bills, defendant stated that he “got” the money at the house of one of his friends where he found the money lying on a table and that he was going to tell his friend that he “took the money and everything”; that, thereafter, they went to the Jacobs warehouse where defendant got out of his car with the money bag and returned to the car without the bag; that they then drove to the Bank of Gonzales where defendant gave him three of the two dollar bills and about five dollars in quarters; that he denied committing the burglary; that he knew that if he said defendant did it, he would not get in trouble for it; and that he was not told he would not be charged for having stolen money in his possession if he testified.
Jamie Bourgeois testified that he knew defendant and that he and defendant were friends; that in November of 1987, he rode to Baton Rouge with defendant; that immediately before they got off the interstate, defendant said: “You believe I got two hundred dollars in two dollars (sic) bills?”; that defendant pulled out two hundred dollars in two dollar bills and counted them; that in order to cash the two dollar bills in, they went to several stores; that defendant also told him that he had a blue Bank of Gonzales bag filled with about one hundred dollars of quarters; that defendant never told him that he had taken the money from the Berthelot home; and that defendant stated that he had stolen the money from his father because he needed *1223 money to pay a debt owed to his father and wanted to make his father think that he was working.
ASSIGNMENTS OF ERROR ONE AND FOUR
Defendant contends that the trial court erred by denying his motion for post-verdict judgment of acquittal because the evidence did not prove defendant’s guilt beyond a reasonable doubt. Defendant asserts that the testimony of Michael Stelly and Jamie Bourgeois lacked credibility and was designed to exculpate them and implicate him.
When reviewing the sufficiency of the evidence to support a conviction, this court must determine if the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime were proved beyond a reasonable doubt. LSA-G.Cr.P. art. 821(B); State v. Captville, 448 So.2d 676, 678 (La.1984). When circumstantial evidence is used to prove the commission of a crime, LSA-R.S. 15:438 provides that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” Ultimately, all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
Simple burglary is defined in LSA-R.S. 14:62, in pertinent part, as follows:
Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein....
As a reasonable hypothesis of innocence, defendant submits that Stelly and Bourgeois “set him up” by throwing change in front of his father’s warehouse and by concocting “stories” to implicate him and exonerate them. The foregoing hypothesis is clearly predicated on the supposition that the testimony of Stelly and Bourgeois lacked credibility.
In finding defendant guilty, it is obvious that the jury accepted all or part of the testimony of Bourgeois and/or Stelly as credible. The credibility of a witness’ testimony is a matter of weight of the evidence. State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987). A determination of the weight to be given evidence is a question for the trier of fact, not subject to appellate review. Id. In light of the apparent acceptance by the jury of all or part of Bourgeois’ and Stel-ley’s testimony as credible, the hypothesis of innocence presented by defendant necessarily falls.
The evidence revealed that on November 13 about one hundred fifty two dollar bills in a blue Bank of Gonzales bag and approximately one hundred sixty dollars in coins in a liquor decanter were taken during the Berthelot burglary. Stelly’s observations of the empty “big ole — like wine bottle” in the back seat of defendant’s car, a blue Bank of Gonzales money bag with coins in it in the front seat of the car, the “big ole” roll of two dollar bills and defendant’s entry into his father’s warehouse with the bag and return without the bag, together with defendant’s statement to Stelly that he “got” the two dollar bills at the home of a friend and that he was going to tell the friend he had taken the money, all occurred on the day of the burglary.
Bourgeois’ testimony revealed that defendant showed him one hundred two dollar bills, went to several stores to apparently exchange or otherwise dispose of the bills, and stated that he had a blue Bank of Gonzales bag filled with approximately one hundred'dollars of quarters which he had stolen from his father. On November 18 and 19, the police recovered numerous coins near the Jacobs warehouse.
Additionally, the testimony of Mrs. Ber-thelot, Stelly and Landry indicated that defendant lived only a short distance from the Berthelot home.
Viewing all the evidence in the light most favorable to the state, we could conclude any rational trier of fact could have found that the state proved beyond a reasonable doubt and to the exclusion of any reasonable hypothesis of innocence that defen *1224 dant was guilty of this burglary. The trial court properly denied defendant’s motion for post-verdict judgment of acquittal.
These assignments lack merit.
ASSIGNMENT OF ERROR NO. TWO
Defendant contends that the trial court erred by denying his motion for new trial. Defendant argues that he is entitled to a new trial under LSA-C.Cr.P. art. 851(4), because the jury considered extraneous information during deliberations that denied him his right to a fair trial as guaranteed by the Fourteenth Amendment. In brief, defendant alleges that the extraneous information considered by the jury was opinions stated by jurors that Stelly, Bourgeois and defendant were all guilty; that they were in a conspiracy to have the jury acquit defendant and that, because of defendant’s father’s financial resources and the likelihood that the three would get together again and commit additional crimes, it was imperative to find defendant guilty.[2]
At the hearing on the motion for new trial, defendant introduced two exhibits into evidence. Exhibit one consists of separate written statements made and signed by three of the jurors, and exhibit two is a written statement made and signed by defendant’s father. Each of the statements is dated May 6, 1988. Although the statements are unsworn, the record discloses that counsel stipulated at the hearing as to the authenticity of both exhibits.
Two of the statements in exhibit one are as follows:
THIS WAS DISCUSSED DURING THE LAST 30 TO 45 MINUTES IN OUR JURORS DELIBERATION ONE WOMEN (sic) SAID THAT “ALL THREE ARE GUILTY, THAT IS WHY THEIR TESTIMONY WAS SO WEAK, MIKE STELLY AND JAMIE BOURGEOIS WERE IN A CONSPIRACY TO GET JACOBS OFF, BECAUSE HIS FATHER HAS PLENTY OF MONEY AND THAT HE BROUGHT IN AN EXPENSIVE LAWYER FROM BATON ROUGE; IF WE LET HIM OFF THEN ALL (3) OF THEM WILL GET TOGETHER AND DO IT AGAIN.” SHE ALSO SAID “WE FIND JACOBS GUILTY AND FOLLOW THROUGH, AND MAKE SURE THE OTHER TWO ARE CONVICTED.”
The other statement in exhibit one is identical to the other two except that the phrase “MIKE STELLY AND JAMIE BOURGEOIS WERE IN A CONSPIRACY TO GET JACOBS OFF” has a line drawn through it, apparently indicating an intent to delete the phrase.
The statement in exhibit two is, in pertinent part, as follows:
ON THE LAST DAY OF MY SON, LEE’S TRIAL MAY 5, 1988, DONALD-SONVILLE, LA. IN JUDGE Á. J. KLING, JR. COURTROOM. I WAS SITTING OUTSIDE OF THE JURORS ROOM WHILE THEY WERE DELIBERATING THE CASE. DURING THE LAST 30 TO 45 MINUTES OF THEIR DELIBERATION I WAS SHOCKED TO HEAR SIX (6) ADULTS LAUGHING AND TALKING ABOUT WHAT THEY SHOULD DO. I HEARD ONE (1) WOMEN (sic) SAY CONTINUOUSLY THAT “ALL THREE ARE GUILTY, THAT IS WHY THEIR TESTIMONY WAS SO WEAK, MIKE STELLY AND JAMIE BOURGEOIS WERE IN A CONSPIRACY TO GET JACOBS OFF, BECAUSE HIS FATHER HAS PLENTY OF MONEY AND THAT HE BROUGHT IN AN EXPENSIVE LAWYER FROM BATON ROUGE; IF WE LET HIM OFF THEN ALL (3) OF THEM WILL GET TOGETHER AND DO IT AGAIN.” SHE ALSO SAID “WE FIND JACOBS GUILTY AND FOLLOW THROUGH, AND MAKE SURE THE OTHER TWO ARE CONVICTED.”
*1225 LSA-R.S. 15:470 (repealed 1988 La.Acts No. 515, § 8),[3] prevents a defendant from going behind a jury’s verdict and taking evidence about the jury’s deliberations. In the ordinary situation, a defendant is foreclosed from inquiry into the basis for a jury’s verdict. State v. Sinegal, 393 So.2d 684, 686 (La.1981) (citation omitted). An exception to the rule exists where there is an unauthorized communication or overt act by a non-juror which creates an extraneous influence on the jury. Id. Additionally, the prohibition of LSA-R.S. 15:470 must yield and our courts are required to take evidence upon well pleaded allegations of prejudicial juror misconduct violating an accused’s constitutional right to a trial by a fair and impartial jury and to set aside the verdict and order a new trial upon a showing that such a constitutional violation occurred and that a reasonable possibility of prejudice exists. State v. Graham, 422 So.2d 123, 131 (La.1982). On the other hand, normal jury pressures and intra-jury influences are not grounds for overturning a verdict. Government of Virgin Islands v. Gereau, 523 F.2d 140, 151 (3d Cir.1975), cert. denied, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976).
Defendant does not allege a communication or overt act of a non-juror which created an extraneous influence on the jury. Instead, he relies on statements allegedly made by one or more of the jurors during jury deliberations as establishing an extraneous influence.
In United States v. McKinney, 429 F.2d 1019 (5th Cir.1970), cert. denied, 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971), the court stated:
All must recognize, of course, that a complete sanitizing of the jury room is impossible. We cannot expunge from jury deliberations the subjective opinions of jurors, their attitudinal expositions, or their philosophies. These involve the very human elements that constitute one of the strengths of our jury system, and we cannot and should not excommunicate them from jury deliberations. Nevertheless, while the jury may leaven its deliberations with its wisdom and experience, in doing so it must not bring extra facts into the jury room. In every criminal case we must endeavor to see that jurors •do not “testify” in the confines of the jury room concerning specific facts about the specific defendant then on trial. Our adversary system presupposes courtroom testimony only and must reject the transfusion of testimony adduced beyond the judicial aegis. To the greatest extent possible, all factual testimony must pass through the judicial sieve, where the fundamental guarantees of procedural law protect the rights of those accused of crime.
McKinney, 429 F.2d at 1022-23.
In our view, the alleged statements, that Stelly, Bourgeois and defendant were all guilty, thus explaining why their testimony was so weak and that they were all in a conspiracy to acquit defendant, represented no more than the opinion of one or more of the jurors, expressed within the context of the jury’s deliberations, rather than the “unsworn testimony” of the juror or jurors expressing that opinion. As previously noted, there was no claim of extraneous influence by some third person, and the evidence presented at the hearing on defendant’s motion for new trial does not show that the alleged statements related any facts from any source other than the juror’s or jurors’ mental processes and/or the evidence introduced at trial. We further conclude that statements made by jurors, such as those statements allegedly made in this case, reflecting a poor opinion of a defendant’s character and a belief that the defendant may likely commit other criminal acts, are undoubtedly frequent occurrences in jury deliberations. Smith v. Brewer, 444 F.Supp. 482, 487 (S.D.Iowa), judgment affirmed, 577 F.2d 466, cert. denied, 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426 (1978).
Furthermore, any possible personal prejudice of any of the jurors in regard to defendant’s or his father’s financial means *1226 and/or their hiring an “expensive lawyer from Baton Rouge,” may not now serve as a basis to overturn the jury’s verdict; the proper time to discover any such possible prejudice would have been during voir dire examination. United States v. Duzac, 622 F.2d 911, 913 (5th Cir.), cert. denied, 449 U.S. 1012, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980). So long as jurors form their opinions about a defendant free from exposure to prejudicial extraneous information or improper outside influence of a type not present in this case, jurors are at liberty to express their views free of the threat of post-verdict scrutiny. Smith v. Brewer, 444 F.Supp. at 487-488. Thus, we conclude that the trial court properly denied defendant’s motion for a new trial.
This assignment lacks merit.
For the reasons stated above, defendant’s conviction and sentence are affirmed.
AFFIRMED.

. In assignment three, defendant asks without alleging any specific error, that this court examine the record for errors patent. Such a request is unnecessary and serves no purpose, since we examine all criminal records for errors patent in accordance with LSA-C.Cr.P. art. 920(2).

. During the jury’s deliberations, the foreman sent the trial judge these questions:
If we the jurry (sic) find the defendant guilty, will the court try Stelly and Bourgeois in connection with reciveing (sic) stolen goods? Also Bourgeois for withholding evidence?
We the jurry (sic) belive (sic) that all 3 are in it together!
We note that nothing presented in this motion goes to the exoneration of defendant but to implicating the other two in the same crime.

. 1988 La.Acts No. 515, § 8, repealed LSA-R.S. 15:470 effective January 1989 (prior to these proceedings) consistent with the enactment of the Code of Evidence.