**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Preston Lavern HOWARD,**
**Defendant-Appellant.**

No. 74–3044.

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1975.

Preston Lavern Howard, pro se.

Frank D. McCown, U. S. Atty., Fort Worth, Tex., William F. Sanderson, Jr., Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before WISDOM, GOLDBERG and GEE, Circuit Judges.

---

* Rule 18, 5 Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970., 431 F.2d 409, Part I.

GOLDBERG, Circuit Judge:

Appellant Preston Lavern Howard was convicted by a jury of possessing goods stolen from interstate commerce, 18 U.S.C. § 659, and was sentenced to four years in prison. His conviction was affirmed on appeal, United States v. Howard, 5 Cir. 1973, 483 F.2d 229, cert. denied, 414 U.S. 1116, 94 S.Ct. 850, 38 L.Ed.2d 744. This appeal is taken from the district court's denial of a motion to stay execution and grant a new trial.

Howard's motion was based on an allegation of irregularity in the deliberations of the jury that convicted him. With his motion he submitted an affidavit allegedly executed by Emmett Burrell Wedgeworth, one of his convicting jury members, to the effect that during the jury's deliberations one juror "stated that the defendant had been in trouble two or three times" and that this fact was used to pressure the affiant and another juror into aligning with the rest of the panel in a guilty verdict. The trial court denied Howard's pro se motion without a hearing, on the ground that a juror is incompetent to impeach the unanimous verdict of the jury in which he participated.

■ The basis of Howard's motion is the assertion that extrinsic facts—that Howard had been in trouble before—were introduced by a juror into the jury room. No such evidence was admitted during the trial and Howard obviously had no opportunity to test, to contradict or to qualify the juror's alleged assertion. In these circumstances, given the prejudicial potential of such an affirmation of extrinsic fact, we must vacate the district court's order and remand the cause for the district court to inquire into the accuracy of the Wedgeworth affidavit and to consider, in light of the objective facts regarding the alleged jury breach, whether there was any reasonable possibility of prejudice to Howard. Modern day trials are factually presented in open court before the iron curtain descends upon the jury room. We cannot tolerate prejudicial factual intrusion into that sanctum lest our courts return to darker days of our jurisprudential history. The dagger of hidden evidence must not be taken from its scabbard for the first time in the jury room to wound the defendant; and unless its piercing effect is only skin deep and without prejudice to the anatomy of the trial, we must apply a constitutional salve.

I

The modern jury is conceived of as an institution that determines the merits of a case solely on the basis of the evidence developed before it in the adversary arena. As Justice Holmes observed in Patterson v. Colorado, 1907, 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879, 881, "The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." Accordingly, courts have been continually sensitive to the jeopardy to a criminal defendant's Sixth Amendment rights posed by any jury exposure to facts collected outside of trial.

This is the premise, for example, of the cases involving adverse publicity. See, e. g., Sheppard v. Maxwell, 1966, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600; Irvin v. Dowd, 1961, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751; Marshall v. United States, 1959, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250. This danger to fair trials is most acute when facts which have not been tested by the trial process have been intentionally communicated directly to the jurors. Thus, for example, we held in Paz v. United States, 5 Cir. 1972, 462 F.2d 740, cert. denied, Jackson v. United States, 414 U.S. 820, 94 S.Ct. 47, 38 L.Ed.2d 52, that where books on drug problems and drug traffic were discovered to be in the jury room during the jury's deliberations in a narcotics case, the defendants were entitled to a new trial "unless it [could] be said that there [was] no reasonable possibility that the books affected the verdict." And in United States ex rel.

Owen v. McMann, 2 Cir. 1970, 435 F.2d 813, cert. denied, 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed.2d 646, the Second Circuit affirmed a trial court's grant of habeas relief to a state prisoner where one or some of the convicting jury members had reported to other jurors extrinsic facts regarding the defendant's past. *See also* Parker v. Gladden, 1966, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (communication between bailiff and jury regarding defendant); Remmer v. United States, 1954, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (apparent attempt to bribe juror, followed by FBI interrogation); United States v. Thomas, 7 Cir. 1972, 463 F.2d 1061 (newspaper article in jury room); Downey v. Peyton, 4 Cir. 1971, 451 F.2d 236 (discussion among jurors of extrinsic evidence regarding defendant's conduct in other affairs); United States v. Pittman, 9 Cir. 1971, 449 F.2d 1284 (government witness operating tape recorder in jury room); Farese v. United States, 5 Cir. 1970, 428 F.2d 178 (jury discovery of $750 in cash in exhibit, crime charged involved monetary gain); Morgan v. United States, 5 Cir. 1967, 380 F.2d 915 (conversation between juror and non-juror regarding defendant); Richardson v. United States, 5 Cir. 1966, 360 F.2d 366 (conversation between juror and prosecution witness).

The same principles obtain in this case. Taking the affidavit as correct, we cannot conclude that the jury irregularity alleged here was inherently harmless to Howard's rights. *See* Richardson v. United States, *supra; cf.* Remmer v. United States, *supra.* We cannot doubt the prejudicial potential of a report—which the criminal defendant had no opportunity to challenge—that he had been in trouble before. *See* Downey v. Pey-

ton, *supra;* United States ex rel. Owen v. McMann, *supra; cf.* Remmer v. United States, *supra.* Compare Paz v. United States *supra* ("Here, as in [Farese v. United States, *supra*], the extrinsic matter does not go directly to the offense charged but to the type of conduct and activities on trial.").[1]

Nor do we think that Howard's petition must fail because the extrinsic facts introduced into the jury room were baggage of a participating juror rather than a bailiff or some other foreigner to the jury's deliberations. Rather, we follow the scholarly opinion of Judge Friendly on this matter in United States ex rel. Owen v. McMann, *supra,* a case closely paralleling this. While the thirteenth century jury may have been selected precisely because of its ready familiarity with background facts,[2] this no longer fits our conception of the jury's role. The modern juror's "verdict must be based upon the evidence developed at the trial." Irvin v. Dowd, 1961, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 755. It is of course "the very stuff of the jury system" for the jury to exercise its collective wisdom and experience in dissecting the evidence properly before it; and in this process the cross-pollination of opinion, viewpoint, and insight into human affairs is one of the jury's strengths. But this does not include communication from one juror to another of objective extrinsic facts regarding the criminal defendant or his alleged crimes. As we said in Farese v. United States, *supra,* 428 F.2d at 179–180:

It is a fundamental principle that the government has the burden of estab-

---

1. Nor does the fact that the extrinsic facts were alleged to have been reported to the jury orally rather than by document conclusively defuse the threat of prejudice. *See, e. g.,* Downey v. Peyton, *supra;* United States ex rel. Owen v. McMann, *supra.* Rather, this is simply one in the matrix of factors that must be evaluated by the district court on remand. *See* United States v. McKinney, 5 Cir. 1971, 434 F.2d 831, cert. denied, 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825, *reconsider-*

*ing* United States v. McKinney, 5 Cir. 1970, 429 F.2d 1019. *Cf.* Paz v. United States, 5 Cir. 1973, 473 F.2d 662 (Paz II); Morgan v. United States, 5 Cir. 1968, 399 F.2d 93, cert. denied, 393 U.S. 1025, 89 S.Ct. 635, 21 L.Ed.2d 568 (Morgan II); Richardson v. United States, 5 Cir. 1967, 376 F.2d 844 (Richardson II).

2. *See* discussion in United States ex rel. Owen v. McMann, 435 F.2d at 816.

lishing guilt solely on the basis of evidence produced in the courtroom and under circumstances assuring the accused all the safeguards of a fair trial.

. . .

. . . Judicial control of the juror[s'] knowledge of the case pursuant to the laws of evidence is fundamental to the prevention of bias and prejudice. Our rules of evidence are designed to exclude from consideration by the jurors those facts and objects which may tend to prejudice or confuse. Evidence presented under the exclusionary rules is subject to cross-examination and rebuttal. It is therefore necessary that all evidence developed against an accused "come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." Turner v. Louisiana, 1965, 379 U.S. 466, 472–473, 85 S.Ct. 546, 550, 13 L.Ed.2d 424.

These principles are equally offended whether the prejudicial extrinsic evidence before the jury comes from the lips of a bailiff or a juror. *Accord*, Downey v. Peyton, *supra*. *See also* United States v. Thomas, *supra* (newspaper articles introduced into jury room by jurors); Paz v. United States, *supra* (books evidently introduced into jury room by juror).

■ The Government objects that we may not consider the affidavit of juror Wedgeworth, because a juror cannot impeach his own panel's verdict. But the Government's characterization of the recognized doctrine is grossly oversimplified. Well-established case law forbids the eliciting of juror testimony regard-

ing the jury's mental processes, or the influences that any particular evidence had upon the jury's conclusion. *See* United States v. Blackburn, 5 Cir. 1971, 446 F.2d 1089; . Dickinson v. United States, 5 Cir. 1970, 421 F.2d 630; Cunningham v. United States, 5 Cir. 1966, 356 F.2d 454. However, it was established federal law as early as Mattox v. United States, 1892, 146 U.S. 140, 149, 13 S.Ct. 50, 53, 36 L.Ed. 917, 921, (involving a bailiff's statements to the jury, and exposure of the jury to a prejudicial newspaper article) that "a juryman *may* testify to any facts bearing upon the question of the *existence* of any extraneous influence, although not as to how far that influence operated upon his mind" [emphasis added]. *Accord*, Remmer v. United States, *supra*; United States v. Thomas, *supra*; Downey v. Peyton, *supra*; Miller v. United States, 2 Cir. 1968, 403 F.2d 77; Proposed Fed.R.Evid. 606(b), 56 F.R.D. 183; ABA Standards Relating to the Administration of Criminal Justice, Trial By Jury, § 5.7(b)(i); 2 C. Wright, Federal Practice and Procedure, § 554, p. 492.[3] Thus in Downey v. Peyton, *supra*, the Fourth Circuit remanded to the district court for a hearing on whether prejudicial matters not in evidence were actually discussed in the jury room, as had been alleged by some jurors. Similarly, the Second Circuit affirmed identical steps initiated by the district court in United States ex rel. Owen v. McMann, *supra*. *See also* Remmer v. United States, *supra*. Moreover, this is consistent with procedures we have adopted in resolving other cases dealing with jury irregularities, *viz.* permitting examination of jurors regarding introduction of extrinsic facts into the jury room. In Paz v. United States, *supra*, for example, we remanded to the district court

---

3. The evolved law represents an accommodation of conflicting policies: on the one hand, the interest in stability of jury verdicts and the protection of jurors from harassment, *see* McDonald v. Pless, 1915, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300; on the other hand, the prevention of injustice arising from unfair trial. As Judge Friendly has remarked, "While [existing law] can be criticized as for-

bidding inquiry into the subject most truly pertinent, it represents a pragmatic judgment how best to attempt reconciliation of the irreconcilable." Miller v. United States, 403 F.2d at 83, n. 11. In framing its view in *Mattox* the Supreme Court relied in part on the reasoning of Perry v. Bailey, 12 Kan. 539, 545:

with directions to conduct an evidentiary hearing to determine whether there is or is not a reasonable possibility that the books affected the jury's verdict, Farese v. United States, *supra*. Inquiry must be made into how the books reached the jury room; whether they were available to members of the jury and, if so, for how long; the extent, if any, to which they were seen, read, discussed and considered by members of the jury; and such other matters as may bear on the issue of the reasonable possibility of whether they affected the verdict.

462 F.2d at 746. *See also* United States v. Allison, 5 Cir. 1973, 481 F.2d 468; Morgan v. United ·States, *supra*; Richardson v. United States, *supra*.

█ Accordingly, we remand the cause to the district court for further proceedings. The district court should hold a hearing to determine the accuracy of the objective allegations of the Wedgeworth affidavit. In so proceeding, the district court must disregard those portions of the affidavit purporting to reveal the influence the alleged prejudicial extrinsic matter had upon the jurors, and it must avoid examination concerning any other aspect of the jurors' mental processes. The evidentiary inquiry before the district court on remand must be limited to objective demonstration of extrinsic factual matter disclosed in the jury room. Having determined the precise quality of the jury breach, if any, the district court must then determine whether there was a reasonable possibility that the breach was prejudicial to the defendant. *See* United States v. Allison, *supra*; Paz v. United States, *supra*; Farese v. United States, *supra*. Again, the district court is precluded from investigating the subjective effects of any breach on any jurors, whether such effects might be shown to affirm or negate the conclusion of actual prejudice. Though a judge lacks even the insight of a psychiatrist, he must reach a judgment concerning the subjective effects of objective facts without benefit of couch-interview introspections. In this determination, prejudice will be assumed in the form of a rebuttable presumption, and the burden is on the Government to demonstrate the harmlessness of any breach to the defendant. *See* Remmer v. United States, *supra*; United States v. Allison, *supra*; Richardson v. United States, *supra*.

The order denying Howard's motion for new trial is vacated, and the cause is remanded for further proceedings consistent with this opinion.

Public policy forbids that a matter resting in the personal consciousness of one juror should be received to overthrow the verdict, because being personal it is not accessible to other testimony; it gives to the secret thought of one the power to disturb the expressed conclusions of twelve; its tendency is to produce bad faith on the part of a minority, to induce an apparent acquiescence with the purpose of subsequent dissent; to induce tampering with individual jurors subsequent to the verdict.

But as to overt acts, they are accessible to the knowledge of all the jurors; if one affirms misconduct, the remaining eleven can deny; one cannot disturb the action of the twelve; it is useless to tamper with one, for the eleven may be heard. Under this view of the law the affidavits were properly received. They tended to prove something which did not essentially inhere in the verdict, an overt act, open to the knowledge of all the jury, and not alone within the personal consciousness of one.