**UNITED STATES of America**

v.

**Clarence BLAIR.**

**Crim. No. 77–413.**

United States District Court, District of Columbia.

Feb. 8, 1978.

Thomas G. Corcoran, Asst. U. S. Atty., Washington, D. C., for plaintiff.

John G. Gill, Jr., Gill & Sippel, Rockville, Md., for defendant.

MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

This case is before the Court on a Motion for a New Trial filed by the defendant

Blair. The Government has filed an Opposition thereto. A hearing was held pursuant to Federal Rule of Evidence 606(b), wherein testimony of two jurors was received. For the reasons discussed below, this Court finds that extraneous information improperly entered into the jury's deliberations, thereby creating a reasonable possibility of prejudice to defendant Blair. Because the particular facts involved in this case are critical to this Court's decision, a detailed description of those facts and the surrounding circumstances follows.

In an indictment filed July 26, 1977, the Grand Jury jointly charged Claude A. Johnson and Clarence Blair with two counts of distributing narcotics (heroin) in violation of Title 21, United States Code, Section 841(a). On November 16, 1977, defendant Johnson plead guilty to count two of the indictment. Defendant Blair was tried before a jury on November 29, 1977. No questions concerning Claude Johnson were asked the jury panel on *voir dire* because the Government and defense counsel had previously agreed that neither side would call Mr. Johnson as a witness. On December 1, 1977, following two days of trial and approximately ten (10) hours of deliberations, the jury returned a verdict of not guilty as to count one, and guilty as to count two.

The Government's case against Clarence Blair was based on circumstantial evidence tending to prove that defendant Blair supplied codefendant Johnson with heroin which was subsequently sold to undercover officers of the Metropolitan Police Department. The Government's evidence placed defendant Blair at the premises of codefendant Johnson at or about the time that the sales of heroin from Johnson to undercover police officers were allegedly occurring at that location. Defendant Blair was arrested shortly after the second alleged heroin transaction, charged in count two. Four Hundred Dollars ($400) in marked advanced Metropolitan Police Department funds was found in defendant Blair's possession at the time of his arrest. It should be noted that defendant Blair was never seen with heroin in his immediate possession.

Defendant Blair's alibi defense to the first count was that he was attending choir practice at the time of the alleged transaction. As for the second count, defendant Blair's defense was that he went to codefendant Johnson's apartment for the purpose of obtaining a loan. He disclaimed any knowledge of the alleged drug transactions.

The substance of the alleged discussions between defendant Blair and codefendant Johnson were excluded pursuant to the hearsay rule from presentation during trial, and the jury was so instructed. The existence of those discussions was disclosed, however.

Shortly after entry of the verdict on December 1, 1977, Phyllis A. Smith, juror number seven, advised the government prosecutor that she overheard Beryl H. Thompkins, juror number three, state during the deliberations that she (Ms. Thompkins) knew the codefendant Claude Johnson. Upon learning of this development, counsel for defendant Blair moved for a new trial.

This Court determined that a limited inquiry should be conducted to determine exactly what had occurred. *See Southern Pac. Co. v. Klinge*, 65 F.2d 85, 88 (10th Cir.), *cert. denied*, 290 U.S. 657, 54 S.Ct. 72, 78 L.Ed. 569 (1933). On January 25, 1978, a hearing was held pursuant to Federal Rule of Evidence 606(b).[1] Testimony was received from Ms. Smith and Ms. Thompkins.

1. Federal Rule of Evidence 606(b) states:
   Upon an inquiry into the validity of a verdict . . . a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict . . . or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about what

Ms. Smith testified that she overheard the following colloquy occur during the deliberations:

Ms. Thompkins: "I can't answer that question (to Juror Number Four, later identified as John V. Moten). I know Claude Johnson personally."

Mr. Moten: "Are you sure it's the same one?"

Ms. Thompkins: "Yes."

Ms. Smith could not remember the question asked by Mr. Moten. There is no evidence that any more discussion pertaining to this matter took place. Ms. Smith further testified that at the time this discussion occurred, the jury had already reached a verdict of not guilty on count one, and all the jurors but Mr. Moten had voted for conviction on count two. She testified that approximately ten minutes after this incident, the jury returned its unanimous verdict.

Ms. Thompkins testified at the hearing that she did state during the deliberations that she knew the codefendant Claude Johnson, although she could not recall the precise discussion nor its context. Moreover, she testified that she did know Mr. Johnson, that she had gone to Junior High School and High School with him, and that she had heard that Mr. Johnson was "hooked on drugs."

Two questions are raised before this Court in determining whether a new trial should be granted. The first question is whether the discussion between Ms. Thompkins and Mr. Moten, and overheard by Ms. Smith, presents a reasonable possibility of prejudice to defendant Blair so as to jeopardize his constitutional "right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana*, 379 U.S. 466, 473, 85

S.Ct. 546, 550, 13 L.Ed.2d 424 (1965). The second question presented is whether the knowledge of codefendant Johnson possessed by Ms. Thompkins but *not related* by her to any other juror is in and of itself the type of "improper extrinsic factual material" which should not be allowed to enter into an individual juror's deliberations.[2] Because this Court finds that the discussion between Ms. Thompkins and Mr. Moten raises a sufficient likelihood of prejudice to defendant Blair so as to require a new trial, it is unnecessary for the Court to confront the second question posed above.

The test this Court must apply in determining if the jury verdict need be disturbed—an action which the Court should not lightly undertake—is whether the extrinsic evidence introduced by one juror into the jury's deliberations created a reasonable possibility of prejudice to the defendant. *See, e. g., Farese v. United States*, 428 F.2d 178, 181, 182 (5th Cir. 1970). This Court concludes that, considering all the particular circumstances of this case, Ms. Thompkins' statement that she knew the codefendant Claude Johnson, coupled with her prior vote of guilty on count two, raised a sufficient possibility of prejudice to the defendant Clarence Blair.

It is well settled that a defendant's constitutional rights of confrontation, cross-examination, and counsel are "equally offended whether the prejudicial extrinsic evidence before the jury comes from the lips of a bailiff or a juror." *United States v. Howard*, 506 F.2d 865, 868 (5th Cir. 1975). Therefore, defendant Blair's Motion need not fail merely because the "extrinsic facts introduced into the jury room were baggage of a participating juror rather than a bailiff or some other foreigner to the jury's

---

he would be precluded from testifying be received for these purposes.

See also *Mattox v. United States*, 146 U.S. 140, 148–50, 13 S.Ct. 50, 36 L.Ed. 917 (1892); *Ryan v. United States*, 89 U.S.App.D.C. 328, 191 F.2d 779 (1951), cert. denied, *Duncan v. United States*, 342 U.S. 928, 72 S.Ct. 368, 96 L.Ed. 691 (1952).

**2.** This Court would be particularly concerned with the effect of Ms. Thompkins' knowledge of codefendant Johnson's drug use upon her verdict.

This Court could find no case in which a juror entered the jury deliberations having within her own consciousness knowledge of potentially prejudicial facts, not gathered pursuant to evidentiary safeguards during trial, which did not then enter into the general jury deliberations. See, e. g., *United States ex rel. Owen v. McMann*, 435 F.2d 813 (2d Cir. 1970), cert. denied, 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed.2d 646 (1971); *United States v. Howard*, 506 F.2d 865, 866 (5th Cir. 1975).

deliberations." *Id.* at 867. *See also United States ex rel. Owen v. McMann, supra.*

The Government apparently argues that extrinsic evidence introduced into jury deliberations by a juror might only be prejudicial if it involves specific aspersions which clearly implicate the defendant.[3] The Government relies upon *United States ex rel. Owen v. McMann, supra,* for this argument. *McMann* did involve statements made by three jurors during deliberations alleging specific unfavorable incidents in the defendant's life. Although it might be argued that dicta in that case suggests that such specificity was necessary to the Court's finding of prejudice,[4] that approach is unsound.

A number of courts have found prejudice to have arisen in much less egregious circumstances than were involved in *McMann.* *See, e. g., Turner v. Louisiana, supra;*[5] *United States v. Howard, supra;*[6] *Farese v. United States,* supra;[7] *State v. McChesney,* 114 Wash. 113, 194 P. 551 (1921);[8] *United States v. Downing,* Criminal No. 28638–76 (Superior Court of the District of Columbia, October 7, 1976).[9]

To determine whether extrinsic evidence introduced into the jury's deliberations raises a reasonable possibility of prejudice, a court must examine the particular circumstances involved in the case. Ms. Thompkins' statement during deliberations that she knew Claude Johnson on its face may appear to be quite general and innocuous. However, when that statement, coupled with Ms. Thompkins' prior vote for conviction on count two, is examined in the context of the entire record in this case, the requisite prejudice is apparent. The Court particularly takes note of the circumstantial nature of the Government's case.

Having considered the entire circumstances surrounding the introduction of the extrinsic information into the jury's deliberations, this Court concludes that there is a reasonable possibility of prejudice resulting to the defendant.

Based upon the foregoing, it is by the Court this 8th day of February, 1978,

ORDERED, that a mistrial be and hereby is declared and the verdict entered herewith on the 1st day of December, 1977, be and hereby is set aside; and it is

FURTHER ORDERED, that Defendant's Motion for a New Trial be and hereby is GRANTED.

---

**3.** Government's Opposition to Defendant's Motion for a New Trial, at 3–4 (filed December 15, 1977).

**4.** *United States ex rel. Owen v. McMann,* supra, 435 F.2d at 818–19, states:

Owen's case falls on the impermissible side of this by no means bright line, although perhaps not by much. On the basis of the judge's findings, the jurors' statements went beyond Owen's being something of a ne'er-do-well; they include allegations of at least two specific incidents which had not been received in evidence, and which Owen had had no opportunity to refute.

**5.** That case involved two government witnesses having substantial contact with the jury, although there was no evidence that any discussions relevant to the case occurred.

**6.** That case involved statements by one juror that the defendant had been in trouble several times before.

**7.** That case involved the discovery by the jury of a sum of money hidden in clothing which had been admitted into evidence. The court noted that the particular circumstances of that case, involving securities fraud, played a major role in its finding of prejudice.

**8.** That case involved a statement by one juror that he had lost cattle in the vicinity of the defendant's land, implying that the defendant may have been involved. The particular charge was grand larceny.

**9.** That case involved the disclosure by one juror that he had made an independent investigation and had determined to vote for conviction. At the time, he had been the only juror voting for acquittal, the others for conviction. This being so, the court still concluded that, "Receipt by the jury of this unsworn, inadmissible evidence was a violation of due process even though there is no showing that the information actually influenced the jury. The probability of prejudice is too high." *United States v. Downing,* supra, at 2.