See also 5 Cir., 722 F.2d 1175.

**UNITED STATES of America, Plaintiff,**

v.

**Michael H. O'KEEFE, Defendant.**

**Crim. No. 82–110.**

United States District Court,
E.D. Louisiana.

Feb. 21, 1984.

John Volz, U.S. Atty., Robert J. Boitmann, Fredericka L. Homberg, Asst. U.S. Attys., New Orleans, La., for plaintiff.

Camille F. Gravel, Jr., Alexandria, La., William H. Jeffress, Jr., Washington, D.C., for defendant.

CASSIBRY, District Judge:

Defendant Michael O'Keefe grounds this motion for new trial on an assertion of prejudicial extraneous influence on a member of the jury which convicted him. The extraneous influence complained of is a remark allegedly made to juror Clifford Baker on the morning testimony began in O'Keefe's trial.

On that morning, juror Baker, a school principal, called his supervisor, St. Landry Parish School Board superintendent Ellis Roussel, to inform him that he had been selected as a juror and would be absent from work for a week or two. According to Baker, Roussel asked if Baker would be serving on the O'Keefe jury. Baker replied in the affirmative. Roussel then said, "I hope you hang him" or "I'd hang him" or words to that effect. (Tr. 14) [1].

It is defendant's contention that there is a "reasonable possibility" that this last remark may have influenced juror Baker's vote to convict Michael O'Keefe. *United States v. Howard,* 506 F.2d 865, 869 (5th Cir.1975); *Braswell v. United States,* 200 F.2d 597, 602 (5th Cir.1952). Defendant's motion suggests that because, at the time the remark was made, juror Baker was having difficulties in his job, he may have believed his own job security to have been dependent on doing as Roussel said. Baker, so this theory runs, took Roussel's flip remark seriously and allowed his vote to be affected thereby.

The court heard oral argument from counsel for both sides on February 1, 1984 and denied defendant's motion for new trial from the bench for the reasons set forth below.

### Intimations of Juror Misconduct

On February 5, 1983, the jury in this case returned verdicts of guilty on one count of mail fraud and two counts of obstruction of justice against the defendant, Michael O'Keefe. Five months later, on July 13, 1983, Clifford G. Baker, one of the jurors in the case, contacted the court to complain that he felt that an attempt was being made to force him from his job on account of his decision in this case. I contacted the United States Attorney's Office and they brought juror Baker in to be interviewed by the FBI.

In the course of this interview, juror Baker revealed the "I'd hang him" remark which he alleged had been made to him by

---

**1.** Citations in the form of Tr. [page number] refer to the transcript of the court's in-camera examination of Clifford Baker and Ellis Roussel, held on August 2, 1983.

his superintendent, Ellis Roussel. In order to explore the circumstances surrounding the alleged making of this remark and to consider its influence on Clifford Baker and any prejudice to the defendant, I conducted an in-camera examination of Messrs. Baker and Roussel, individually, in the presence of the government prosecutors and defense lawyers. *United States v. Phillips*, 664 F.2d 971, 999 (5th Cir.1981).

*Waiver*

Before coming to the substance of the defendant's claim of juror misconduct, it is necessary to consider the government's charge that the defense has waived its right to present this motion to this court at all. It is the government's position that by first bringing the question of possible prejudicial extraneous influence to the Fifth Circuit Court of Appeals, the defense deliberately bypassed the District Court. The government contends further that the defendant's delay in presenting the issue to the Fifth Circuit unnecessarily deprived this court of an opportunity to exercise its fact-finding responsibilities, thereby assuring that the incident could not be considered in the appeal of this matter.

This court held its in-camera examination of juror Baker and Superintendent Roussel on August 2, 1983. At that time, defendant's appellate brief had already been filed. The Government had not yet responded. Juror Baker's testimony at the hearing put the defendant on notice, as of August 2, 1983, of this issue. The transcript of the hearing was prepared and filed into the record on September 9, 1983. Defendant did not petition the Fifth Circuit for leave to file a supplemental memorandum on this issue until October 17, 1983. One week later, the Fifth Circuit denied defendant's motion for leave to file its supplemental memorandum without prejudice to any filing defendant might wish to make in District Court. Shortly thereafter, on November 3, 1983, the Fifth Circuit held oral argument in this case.

Even allowing for defendant's reasonable desire to examine the transcript of the hearing before making a motion, it is clear from this chronology that defendant did not proceed with great alacrity. Not till December 21, 1983, only one day prior to the day the Fifth Circuit affirmed defendant's conviction, 722 F.2d 1175, did defendant file his motion for new trial in this court. Moreover, defendant ignored the proper procedure to be followed in moving for a new trial while a case is pending on appeal. *United States v. Fuentes-Lozano*, 580 F.2d 724, 726 (5th Cir.1978).

 *Fuentes* is explicit on this point. A motion for new trial may be presented directly to the District Court while the appeal is pending; the District Court is without authority to grant the motion but it may deny it, or the District Court may advise the Court of Appeals that it would be disposed to grant the motion if the case were remanded to it. *Fuentes*, 580 F.2d at 726. Appellant's alternative was not to file a supplemental memorandum in the Court of Appeals but to seek a remand from the Court of Appeals for the purpose of permitting the District Court fully to entertain the motion for new trial.

Defendant's counsel are experienced lawyers; they cited *Fuentes* in the opening sentence of their memorandum in support of the motion for new trial; they had ample time to familiarize themselves with the law in this area. Defendant attempted to put the cart before the horse. Had he succeeded, this court would have had no opportunity to consider the testimony it elicited from the witnesses, assess its credibility, and make findings based thereon. While the court does not condone the delay tactics followed by the defense, we think it best in this instance to settle on the merits any question this incident raises as to the validity of the defendant's conviction.

The alternative course open to me is to construe defendant's actions as a waiver of his right to bring this motion before this court. By so holding, this court would not then reach the question of whether extraneous prejudicial influence tainted the verdict in this case. If the finding of waiver were later set aside, this court would then have to return to the question now before

it but with the added handicap of the passage of more time between the August 1983 hearing and a review of the transcript. At this time, the matter remains fresh in the court's mind and the court retains a distinct impression of the demeanor and credibility of the witnesses it examined.

For all these reasons, therefore, the court declines to hold that the defense waived its right to bring this motion. We now proceed to consider the substance of the claim presented.

### The Scope of the Inquiry

Rule 606(b) of the Federal Rules of Evidence delineates the competency of juror testimony in the following manner:

> (b) INQUIRY INTO VALIDITY OF VERDICT OR INDICTMENT. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

■ Inquiry eliciting testimony concerning the objective facts and circumstances surrounding the supposed prejudicial extraneous influence is proper; questions probing a juror's thoughts or the effect of the remark on his "assent to the verdict" are improper. *Howard*, 506 F.2d at 869. Although my questions exceeded the proper scope of inquiry under Rule 606(b) in two and possibly three instances, I have entirely disregarded any and all of juror Baker's answers which mention the effect on him of the remark in question. (Tr. 15, 34, 35).

### The Conversation

Based on the witnesses' responses under oath and my assessment of their credibility, I have made the following findings of fact:

1. Clifford Baker, a school principal in St. Landry Parish, was selected to serve as a juror in the O'Keefe case on January 26, 1983. Along with the other members of the jury, Mr. Baker was sworn and instructed to return to begin serving the next day. The following morning, January 27, 1983, Mr. Baker telephoned his supervisor, St. Landry Parish Schools superintendent Ellis Roussel, to inform him of his selection and to say that jury service might require him to be absent from his job for an additional week or two. (Tr. 13).

2. It was during this conversation that the remark which is the basis of defendant's claim of prejudice was made. We set forth verbatim juror Baker's testimony as to his recollection of the conversation.

> MR. BAKER: Well, he had drawn the conclusion when I called that I was probably on the O'Keefe case, and he asked, Is it the O'Keefe case? And I said, Yes. And he made the statement that he should be hanged, or I would hang him, and laughed, and I mentioned to him at that time that I am not at liberty to speak at all about the case, and I am not to look at the media or look at the newspaper or anything of that nature. And he agreed to allow me to be off the duration of the trial. (Tr. 14).

This was the one and only conversation juror Baker and Superintendent Roussel had about the O'Keefe case until after the trial was over. (Tr. 14, 60).

### Discussion

Ellis Roussel, for his part, has no recollection of having made such a remark, although he does recall the conversation with Baker on the morn of trial. Roussel testified that he did not say anything to indicate how he would decide the case nor suggest to juror Baker how he would want Baker to decide the case. (Tr. 51–52).

The first question to decide, therefore, is whether the alleged remark was ever actually made. Clifford Baker, albeit belatedly, has testified to having heard it. Ellis Roussel does not recall having said it. We turn, therefore, to an assessment of the credibility of the witnesses.

The August 2, 1983 hearing marked the third occasion I had to observe and question Mr. Baker. Baker had previously been thoroughly and individually examined by the court, once on voir dire and again, during an earlier in-camera evidentiary hearing on a different matter involving outside influence on the jury in this case. Based on his responses and my observation of Mr. Baker, I have found him to be a conscientious, civic-minded and dedicated juror.

That said, it is also obvious that the timing of juror Baker's coming forward is somewhat suspicious. Baker contacted the court on the morning after he heard a radio report that the School Board had voted to take disciplinary action against him. Out of fear for his job, Baker may have been clutching at straws.

The court is less familiar with the character of Superintendent Roussel. The two witnesses, however, have known each other for at least ten years. (Tr. 49). Referring to the allegedly prejudicial remark made to him by Ellis Roussel, Baker said, "it's a part of [Roussel's] personality, to make those kind of flagrant statements." (Tr. 35). By "flagrant", the court takes Baker to mean Roussel had a penchant for overstatement or ill-considered remarks.

In other words, Ellis Roussel is just the type of person to have made an off-hand, joking remark such as "I hope you hang him." The court, therefore, accepts it as more likely than not that, on the morning of trial, Ellis Roussel did say to Clifford Baker, "I hope you hang him" or words to that effect.

*Intent to Influence*

The next question is whether Superintendent Roussel's remark was intended to influence juror Baker's verdict in this case. The court has no doubt that the answer to this question is no.

Nothing in the record reveals any apparent interest of Roussel in Michael O'Keefe or his case. Roussel testified that he did not know O'Keefe, that he "never came to my mind," (Tr. 53), that he doubted whether he had ever been "in the same room with him." (Tr. 52). There is no suggestion in the record that Ellis Roussel had any family or business ties which might have motivated him to press for O'Keefe's conviction.

There is simply no support for the proposition that Roussel meant to sway Baker's vote in any way. At most, Roussel made a single flip remark. In contrast, when Superintendent Roussel did wish to convince Principal Baker to perform his work duties to Roussel's satisfaction, he had a difficult time of it. Roussel had to discuss matters at length with Baker and resort to repeated meetings or directives. Given this state of affairs, it is difficult to imagine that Roussel would rely on one sudden and abbreviated message to instruct Baker to violate his sworn duty to render a fair and impartial verdict.

*Actual Influence*

We come now to the crux of this matter, namely, the influence Superintendent Roussel's remark had on juror Baker.[2] As stated above, Clifford Baker was a conscientious juror. From the outset of his service, Baker was mindful of the court's injunction not to discuss the case with anyone. The testimony shows that immediately after Roussel said, "I'd hang him", Baker responded that he was "not at liberty to speak at all about the case." (Tr. 14). Roussel confirmed this portion of the conversation. (Tr. 51).

**2.** At the outset of this discussion, the court wishes to reiterate that it has entirely disregarded any testimony of Mr. Baker as to the impact of the remark on his mental processes or its influence on his vote as a juror. The court has considered the testimony of juror Baker only as it reveals the existence of extraneous influence and relates to the facts surrounding the allegedly prejudicial remark. *Howard,* 506 F.2d at 868–69.

Moreover, at the time the remark was made, Clifford Baker was not in any particular job difficulty. The testimony reveals that Clifford Baker, Ellis Roussel and a number of other school officials had a series of meetings culminating in disciplinary charges being brought against Baker in mid-July, 1983. The first of these meetings took place on August 23, 1982. This is the only meeting which took place before the trial in this case.[3] The meeting dealt solely with school related matters. (Tr. 28–30). O'Keefe was not mentioned. Baker testified that he felt friendly and on good terms with Roussel at that time and did not describe the meeting as an "acrimonious" one. (Tr. 30–31).

Not until a month after the verdict was returned in this case did Baker receive any indication that the August meeting had not resolved all questions about his work. On March 2, 1983, Baker again met with Roussel and other school officials. As Baker described it, this meeting was a "re-run" of the earlier one. (Tr. 35). Again, all of the topics discussed pertained to the school system only. (Tr. 10).

At the March 2d meeting, only Baker made mention of the O'Keefe case. Baker suspected that the only reason this meeting had been called had something to do with the O'Keefe case. When Baker asked Roussel point-blank "if . . . for some reason this meeting had been called because of [his service] on the O'Keefe case", Roussel did not respond. (Tr. 37). Baker then put the question a different way and asked if "any member of the [School] Board had encouraged or persuaded" Roussel to call Baker in for a meeting. (Tr. 11). Roussel's engimatic and elusive response to this question was "Well, you know, Riley Boudreaux." (Tr. 11).

From this, Baker concluded that there was some connection between his jury service and his job troubles. (Tr. 11). This, Superintendent Roussel refuted. He de-nied, first, that the meeting had any connection with the O'Keefe case and, second, that Baker's question was presented in the context of the O'Keefe decision. (Tr. 58–59). According to Roussel, O'Keefe was not mentioned in any of the meetings with Baker. (Tr. 59). Although somewhat oblique, Roussel's explanation for the meeting of March 2, 1983 is that he called it in response to complaints about Baker and pressure from Riley Boudreaux, the President of the St. Landry Parish School Board. (Tr. 59).

Also inconsistent with Baker's interpretation of his difficulties is the fact of O'Keefe's conviction. Assuming Roussel had sought to influence Baker to vote "to hang him", why would he then retaliate against Baker after O'Keefe was convicted? The court is simply unpersuaded that the remotest connection existed between Baker's jury service and subsequent job troubles.

Also critical to an evaluation of the influence Roussel's remark may have had is an assessment of the relationship between Baker and Roussel at the time the remark was made. The two men had a lengthy professional relationship; for the past 6–8 years of their service in the parish school system, Roussel had been Baker's supervisor. (Tr. 49). According to Baker, the first time he felt any strain in his relationship with Roussel was after the trial, at the meeting of March 2, 1983. (Tr. 9). Baker was firm on this point. (Tr. 43).

■ Finally, we come to the question of whether Roussel could have influenced Clifford Baker if he'd tried. On this point, the evidence is overwhelming: Superintendent Roussel couldn't get Baker to do anything Clifford Baker didn't want to do. Roussel required repeated meetings with Baker in order to bring him to comply with Roussel's directives. This fact alone convinces the court that no single fleeting remark of Ellis Roussel could have so mo-

---

**3.** Jury selection in O'Keefe's trial began on January 25, 1983 and a verdict was returned on February 5, 1983. In addition to the August 23, 1982 meeting mentioned in the text, meetings between Baker, Roussel and other school officials took place on March 2, 1983, March 18, 1983 and June 20, 1983.

mentous an impact on Clifford Baker as to affect his deliberations in the jury room.

Examples of Baker's intransigence abound. When Baker learned of "some routines that [he] really didn't go along with, [he] decided [he] just wouldn't conduct the workshop [he was scheduled to lead]." He balked at submitting to the central office originals of documents pertaining to the workshop, as requested. Baker also refused to sign transcripts of the March meetings because he felt they were not accurate and were "almost incriminating" (Tr. 43).

The most telling of these incidents took place in November of 1982, two months before O'Keefe's trial. In November, Baker, along with the other principals in the Parish, was subject to observation and evaluation by the Superintendent's assistant, Chief Administrator Willis Octave. These evaluations appear to have been undertaken in preparation for an "accountability" review to be conducted by the State Department of Education. When presented with certain evaluations for his signature, Baker noted that not all observations had been conducted as called for by the accountability program guidelines. He, therefore, refused to sign these evaluation forms. (Tr. 31–32).

Baker then wrote Superintendent Roussel to explain his reasons for not signing the evaluations. The two discussed the problem and Baker "received a mandate from the superintendent to sign the observation." (Tr. 33). This, he felt "was wrong". (Tr. 33). Rather than accede to the superintendent's direct order, Baker went over Roussel's head to seek the advice of the Director of the State Department of Education.

The denouement of this particular set-to is not of interest here. Its significance lies in its contrast with the incident which forms the basis for this motion. Baker's refusal to sign the evaluation forms took place after the August meeting when, according to the defendant's theory, Baker was put on notice of dissatisfaction with his job performance. Baker and Roussel discussed Baker's reasons for not signing the evaluations. Following this discussion, Roussel gave Baker a direct order to sign the forms. Baker refused to do this.

To be sure, Baker's reluctance to sign documents he felt to be inaccurate or misleading may have been motivated, at least in part by self-interest. Self-interest would also motivate one not to be a party to jury-tampering.

Clifford Baker refused to follow the direct and explicit instructions of his superior to attest to the accuracy of documents known to both to be false or misleading. The court is unconvinced that the same man would react to a short, joking, off-the-cuff remark by voting to convict a defendant he thought to be innocent. Additionally, we take note of the three-day-long presentation of evidence by the government in the trial of Michael O'Keefe. This compendium of evidence was more than sufficient to support his conviction. Superintendent Roussel's jest, not plausibly linked to any identifiable interest or motive of either Roussel or Baker, simply could not have weighed enough to unbalance the scales of justice to the prejudice of the defendant.[4]

*The Law*

■ Any off-the-record contact with a juror is presumptively prejudicial and the government bears a heavy burden of proving that the contact did not affect the juror's verdict. *United States v. Forrest*, 620 F.2d 446, 457 (5th Cir.1980). This court must determine whether there was a reasonable possibility that the communication was prejudicial to the defendant. *Howard*, 506 F.2d at 869.

---

**4.** At this point, it may be important to recall the context in which Roussel's remark came to light. Baker learned of the School Board's plans to bring disciplinary charges against him on July 12, 1983. The next day he notified the court of his belief that the Board's action may have been motivated by his service on the O'Keefe jury. Baker was placed in contact with the United States Attorney's office and interviewed by the FBI. Only when prompted by a question asked during that interview did Baker recall the remark. (Tr. 34–35).

## Conclusion

The government has carried its burden here. Assuming, as we have, that there was such a remark as "I'd hang him", we conclude that it was not made with any intention of influencing juror Baker and that it did not in any way influence his vote to convict the defendant. The court is convinced, beyond a reasonable doubt, that Superintendent Roussel's remark had no influence on juror Baker and caused no prejudice whatsoever to the defendant, Michael O'Keefe.

Since we find the prejudicial effect of the remark to be nil, we have no occasion to reconsider our earlier denial of defendant's motion for new trial on grounds of prejudice which would have been avoided by a change of venue.

Defendant's motion for new trial must be denied.

So ordered.