371 So.2d 114 (1978)
Cleveland FREEMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 77-1949.
District Court of Appeal of Florida, Fourth District.
November 8, 1978.
Rehearing Denied January 31, 1979.
Richard L. Jorandby, Public Defender, and Allen J. DeWeese, Asst. Public Defender, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee and Robert L. Bogen, Asst. Atty. Gen. and Kenneth G. Spillias, Legal Intern, West Palm Beach, for appellee.
ANSTEAD, Judge.
The appellant, Cleveland Freeman, was convicted of robbery and appeals the trial court's refusal to instruct the jury on the *115 state's burden to prove identity. We reverse.
Freeman was charged with the robbery of a photography studio operated by Mr. and Mrs. Louis Dee. Mrs. Dee had never seen Freeman prior to the day of the robbery and was the only witness to identify Freeman as the robber at trial. Mrs. Dee reported that Freeman first entered the studio and gave her a photograph of his wife that he wanted enlarged. He was wearing sunglasses. Freeman had Mr. Dee take his photograph and ordered several copies. He gave Mrs. Dee his correct name and other personal information for her to record and left after agreeing to return the next day with a money deposit. This encounter was described as essentially normal.
Then, according to Mrs. Dee, Freeman returned in two or three minutes and demanded that more photographs be taken. She indicated that his appearance had changed.
Q Now at this point, did he look drunk?
A He didn't look right. He certainly looked altered to me. He looked flushed, sweaty. He staggered. He leaned over the desk to support himself. He looked altered; yes. Altered.
Q Different from the person that had been in there just a few minutes ago?
A Yes.
Q And his face was flushed?
A Yes.
Q His eyes were rolling?
A Yes.
Q He was wobbly?
A Yes, sir.
Freeman was thereafter directed by Mrs. Dee to the back of the studio where Mr. Dee was located. When Mrs. Dee heard moaning, she went to the back where she found Freeman holding her husband. Mr. Dee directed her to give Freeman Mr. Dee's wallet. She gave Freeman the wallet and he fled. Mrs. Dee then ran outside the studio shouting for help and encountered a group of young black males. Freeman was a young black but not among these youths. Freeman was later identified by Mrs. Dee by use of the photograph taken of him on his first visit.
In her deposition, Mrs. Dee described Freeman as a small man, five feet five or six inches tall and weighing 140 pounds, whereas at trial she conceded that she had been mistaken and that Freeman was actually a much larger man. She also stated that Freeman appeared to be on drugs when he returned and that when he fled he ran right through the rear screen door. Mrs. Dee also testified that her studio was located in a predominantly black neighborhood and that all of her customers were blacks.
Freeman's only defense was that of mistaken identity. He requested several jury instructions on identity, one of which stated:
I INSTRUCT YOU that the burden is on the State to prove beyond a reasonable doubt, not only that the offense was committed as alleged in the information, but also that the Defendant is the person who committed it. You must be satisfied beyond a reasonable doubt of the accuracy of the identification of the Defendant before you convict him. If the circumstances of the identification are not convincing beyond a reasonable doubt, you must find the Defendant NOT GUILTY.
The prosecutor objected to Freeman's requested instructions but informed the court that he had no objection to an instruction stating that identity must be proven beyond a reasonable doubt. The trial judge initially agreed to give one of the requested instructions, but later changed his mind and refused to give any identity instructions. During the course of deliberating the jury made several requests, including a request that all of the testimony of Mrs. Dee be read to them. This request was refused upon the objection of defense counsel. The jury ultimately returned a verdict of guilty.
On appeal Freeman relies on a number of federal decisions which require a separate instruction on identity. See e.g. United States v. Hodges, 515 F.2d 650 (7th Cir.1975). The state counters by contending *116 that the issue of identity was adequately covered by the voluminous instructions given by the court, all of which referred to the defendant. In other words the state contends that a separate instruction was not necessary since it was perfectly obvious to everyone that it was Freeman who must be proven guilty of the crime charged. The state also contends that Freeman's proposed instructions did not accurately reflect the law and cites the following quotation from the case of Henderson v. State, 94 Fla. 318, 113 So. 689 (Fla. 1927):
The identification by the witness need not be positive or certain; it is enough for him to testify that his opinion, belief, or judgment is that accused is the person who he saw commit the crime. (Id. 113 So. at 694)
We do not believe this statement from Henderson applies to a jury instruction on burden of proof. Rather, the court in Henderson was commenting on the admissibility of identification testimony and correctly stated that such testimony need not be absolute or certain to be admissible. And while we agree that most of Freeman's requested instructions on identity were not proper, we believe the requested instruction quoted, supra, did contain a correct statement of the law.
Neither are we persuaded that the issue of identity was covered in the court's other instructions. True, only Freeman was on trial and hence he was the only one the court could have been referring to as the defendant throughout the instructions. But the instructions themselves only deal indirectly with the issue of identity and instead concentrate on the required proof of the "essential elements" of the charged offense and all lesser included offenses. It is true that these instructions repeatedly refer to the "defendant", but while separately setting out in detail a statement as to each necessary ingredient of each offense, they never once mention the critical ingredient of identity. These instructions do an excellent job of covering the subject matter and in some cases would be adequate to cover the issue of identity also. But when identity is virtually the only issue being tried and the state's case rests on the evidence of a single witness whose testimony is sharply challenged we believe that it is necessary for the jury to have more guidance on that issue than the indirect references to the "defendant" contained in the court's charge.
In many cases where identity is in issue the defendant claims an alibi. In such cases the Florida Standard Jury Instructions in Criminal Cases, Second Edition, provide for the following charge:
One of the defenses in this case is an alibi; that is to say, that at the time of the alleged crime the defendant was not at the place of the crime and that he was so far away that he could not have been at the place where the crime was committed.
Where an alibi is claimed as a defense, it is not necessary that the alibi be proved beyond a reasonable doubt. It is sufficient as a defense if you have a reasonable doubt as to the presence of the defendant at the scene of the alleged crime. If there is such a reasonable doubt it is your duty to find the defendant not guilty.
Just as the issue of alibi merits a separate instruction, so should identity. For in essence, a defendant is claiming mistaken identity by raising an alibi defense, and his proof of the mistaken identity consists of proof of his presence at another place at the time of the crime. The state's burden to prove identity is the same where identity is in issue as when alibi is raised as a defense.
We note that the Standard Jury Instructions contain no charge on the issue of identity, and at least one of our sister courts has taken a contrary stand on the necessity of a separate instruction on identity. Cruz v. State, 310 So.2d 360 (Fla. 3d DCA 1975); Yost v. State, 243 So.2d 469 (Fla. 3d DCA 1971). Under these circumstances it is difficult to criticize the trial court's refusal to instruct on identity. However, we feel that it simply does not make sense to refuse an instruction to the jury on the only issue that was really contested *117 at the trial, while at the same time giving voluminous instructions on numerous issues that were really not in controversy.[1] In an opinion approving the standard jury instructions the Supreme Court stated:[2]
The Court recognizes that the initial determination of the applicable substantive law in each individual case should be made by the trial judge and that it would be inappropriate for the Court at this time to consider the recommended instructions with a view to adjudging that the legal principles in the recommended instructions correctly state the law of Florida. Similarly, the Court recognizes that no approval of these instructions by the Court could relieve the trial judge of his responsibility under the law properly and correctly to charge the jury in each case as it comes before him.
Our views as to the importance of a separate instruction on identity are in accord with those set out in the case of United States v. Hodge, supra:
This decision which we render today is influenced by many what we believe to be serious considerations relative to the administration of criminal justice. First and foremost, although we realize, on the basis of our careful review of the record herein, that the subject of identification was explored by counsel at appellant's trial on cross-examination as well as in final argument, and that the court's instructions to the jury were indeed accurate as to the burden of proof required in criminal cases and concerning the credibility of witnesses, and that the existence of these circumstances has induced some courts to decline to give a detailed charge on eyewitness identification, we are not persuaded to say that the existence of such circumstances necessarily obviates the giving of such an instruction to the jury. Further, we are not completely satisfied that in the instant case the existence of such circumstances served to focus the jury's attention on the issue of identity. In this regard, we are mindful of what the Second Circuit Court of Appeals stated in [U.S. v.] Evans, supra, 484 F.2d 1178 at 1187, with respect to the trial court's failure to give a specific charge to the jury on the dangers of eyewitness identification:
There is no question that identification testimony is notably fallible, and the result of it can be, and sometimes has been, `the greatest single injustice that can arise out of our system of criminal law,' Gregory v. United States, 125 U.S.App.D.C. 140, 369 F.2d 185, 190 (1966), namely the conviction of the wrong man through a mistake in identity. The dangers in this area have been well chronicled, and have been the proper subject of careful attention in this and many other courts....
Since it is our goal to guard against the occurrence of such injustice, we are convinced that neither summation of counsel at the close of the evidence, however prolonged or explicit, nor cross-examination as to the matter of identification by defense counsel adequately protects a defendant against the dangers of misidentification which are inherent in eye witness testimony. Nor do we believe that such summation and cross-examination by counsel may substitute for proper instructions to the jury by the court. In cases such as the present, where the issue of identification is paramount, we define proper instructions to include an identification instruction, when it is tendered to the court, in addition to accurate instructions as to burden of proof and the credibility of witnesses. As the District of Columbia Circuit stated in Salley v. United States, 122 U.S.App.D.C. 359, 361, 353 F.2d 897, 899 (1965): It is the obligation of the trial judge "to instruct the jury that if there was a reasonable doubt as to the identification of the defendant as the person who [committed the crime], then the jury should acquit."
*118 Some of the federal courts have devised lengthy instructions on the issue of identity. See United States v. Telfaire, 152 U.S.App.D.C. 146, 469 F.2d 552 (1972). However, we do not believe it is necessary to instruct on the issue of identity beyond informing the jury as to the existence of the issue and the burden of proof of the state to prove the issue. We conclude that an instruction on the issue of identity and the state's burden of proof thereon should be given in every case where identity is in issue and such an instruction is requested. The trial court should either have given Freeman's requested instruction quoted, supra, or one similar thereto.
Accordingly, the judgment of conviction is hereby reversed for a new trial in accordance with this opinion.
DAUKSCH, J., concurs.
MOORE, J., dissents, without opinion.

ON PETITION FOR REHEARING
Petition for Rehearing is hereby DENIED.
ANSTEAD and DAUKSCH, JJ., concur.
MOORE, J., dissents, with opinion.
MOORE, Judge, dissenting:
I would grant rehearing, withdraw the court's majority opinion, and affirm the judgment of conviction below.
The majority has determined that whenever identity is in issue in a criminal case and an instruction is requested on the burden of proving identity beyond a reasonable doubt, such an instruction must be given. This is an expansion of our standard jury instructions as approved by the Supreme Court of Florida. In the matter of the use by the trial courts of Standard Jury Instructions in Criminal Cases, 327 So.2d 6 (Fla. 1976). I recognize that the Supreme Court did not preclude such expansion in an appropriate case; however, I can see no need for it in the case sub judice.
In charging the jury on the elements of the crime, the burden of proof, and the presumption of innocence, the court made reference to "the" defendant no less than 36 times. There was only one defendant in the courtroom and it is inconceivable to me that the jury did not realize about whom the court was talking or that the jury must find this particular defendant guilty of each and every element of the crime beyond a reasonable doubt. In my opinion the charges as given were complete. It is difficult for me to fault a trial judge who follows the standard jury instructions as approved by our Supreme Court, which instructions are clear, comprehensive and correct. When that is done a conviction based thereon should be affirmed. See, Yost v. State, 243 So.2d 469 (Fla. 3d DCA 1971). See also, State v. Perryman, 49 Ohio St.2d 14, 358 N.E.2d 1040, 1049 (1976).
The failure to give the requested instruction in no way precluded the defense from arguing that the state failed to prove the defendant guilty beyond a reasonable doubt. To the contrary, a review of defense counsel's opening and closing arguments to the jury reveal that the gist of his argument was that the defendant was not proved guilty beyond a reasonable doubt. This argument was based primarily upon the testimony concerning the identity of the accused as related to the jury by the victim. Where the trial court's instructions sufficiently conveyed the substance of the appellant's requested charge it was not error to refuse the requested instruction.
Accordingly, I would affirm the conviction. At most, I would certify the following question to the Supreme Court as one of great public interest:
MUST AN INSTRUCTION ON THE SPECIFIC ISSUE OF IDENTITY AND THE STATE'S BURDEN OF PROOF THEREON BE GIVEN IN EVERY CASE WHERE IDENTITY IS IN ISSUE AND SUCH AN INSTRUCTION IS REQUESTED; AND IF SO, DOES THE FAILURE TO GIVE SUCH AN INSTRUCTION WHEN REQUESTED NECESSARILY CONSTITUTE REVERSIBLE ERROR?
NOTES
[1] We realize that these instructions were required to be given.
[2] In the Matter of the use by the trial courts of the Standard Jury Instructions in Criminal Cases, 327 So.2d 6 (Fla. 1976).