393 So.2d 684 (1981)
STATE of Louisiana
v.
Lee Ray SINEGAL, Jr.
No. 80-K(A)-1422.
Supreme Court of Louisiana.
January 26, 1981.
*685 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., W. Gregory Arnette, Jr., Dist. Atty., Abbott J. Reeves, Asst. Dist. Atty., for plaintiff-appellee.
Helen Roberts, Gravel, Roy & Burnes, Alexandria, for defendant-appellant.
WATSON, Justice.[*]
Defendant, Lee Ray Sinegal, Jr., was convicted of first degree murder in violation of LSA-R.S. 14:30 and sentenced to life imprisonment. Defendant has appealed the conviction and sentence.
Patrick Keith Jackson died from four gun shot wounds he received at the Blue Note Lounge in Jennings, Louisiana, on February 3, 1979. Sinegal told Connie Lynn Clark and Terry Achane beforehand that he intended to shoot Jackson. Achane then witnessed the crime. Sinegal denied the murder on the witness stand, but had previously admitted the shooting to three witnesses. Evidence was presented that Sinegal, age seventeen at the time of the offense, had been drinking.
After Sinegal had been sentenced, his counsel discovered that the jury had examined an obsolete law book found in the jury room during its deliberations. A motion for new trial was denied on the ground that LSA-R.S. 15:470[1] prohibits jurors from impeaching their verdict. The trial court held that the law book did not constitute an unauthorized communication or overt act, and it was unnecessary, therefore, to have an inquiry into the question of prejudice, relying on State v. Marchand, 362 So.2d 1090 (La.1978). After a defense proffer, the trial court stated erroneously that the present law is identical to that in the law book read by the jury and the exposure did not prejudice defendant.
*686 Apparently concerned about intoxication as a defense, the jury requested a special charge on the subject after commencing deliberations. Following a recess, they were correctly charged that an accused cannot be guilty of first degree murder if he is too drunk to have the requisite specific intent.[2]
In the interim between the request and the special charge, one of the jurors read to the others from a 1916 edition of Ruling Case Law a superficially similar statement with one significant difference. The law book version added a qualification for a situation where the intent was formed before the intoxication.[3]State v. Lentz, 306 So.2d 683 (La.1975) stated that this caveat added to a charge on intoxication would be "... a reversible misstatement of the law." 306 So.2d 685. Thus, the trial court erred in not distinguishing between its correct charge and the erroneous statement found by the jury on its own.[4] In consequence, the court was unable to evaluate the prejudice which may have resulted from the jury's research.
The issue is whether the trial court should have granted a new trial after the jury was exposed to the incorrect statement of law from the 1916 book.[5]
The jury's duty is to accept and apply the law given by the court. LSA-C.Cr.P. art. 802. However, LSA-R.S. 15:470 prevents a defendant from going behind a jury's verdict and taking evidence about the jury's deliberations. In the ordinary situation, a defendant is foreclosed from inquiry into the basis for a jury's verdict. State v. Abney, 347 So.2d 498 (La.1977).
An exception to this rule exists when there is an unauthorized communication or overt act by a third person which creates an extraneous influence on the jury. State v. Kifer, 186 La. 674, 173 So. 169 (1937); State v. Marchand, 362 So.2d 1090 (La.1978); Stimack v. Texas, 548 F.2d 588 (5 Cir. 1977). Further, when the statutory prohibition infringes on a defendant's constitutional right to a fair trial, jurors are competent to testify about juror misconduct. Durr v. Cook, 589 F.2d 891 (5 Cir. 1979), reversing State v. Durr, 343 So.2d 1004 (La.1977). A law book which is read by the jury is an extraneous intrusion on the jury's verdict. The written word of a legal volume is more of an intrusion than a verbal communication because of its imprimatur of authority.
Extraneous influences invalidate the jury's verdict unless it can be shown that their effect was harmless. Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892); State v. Carter, 363 So.2d 893 (La.1978); Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959). "In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending ... is ... deemed presumptively prejudicial, ...". Remmer v. United States, 350 U.S. 377, 76 S.Ct. 425 at 426, 98 L.Ed. 654 (1954). Also see State v. Wisham, 384 So.2d 385 (La. 1980).
It is essential that all facts considered by the jury are produced in the courtroom with full protection of defendant's rights to confrontation and due process. *687 United States v. Howard, 506 F.2d 865 (5 Cir. 1975); Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965); Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); People v. Holmes, 69 Ill.2d 507, 14 Ill.Dec. 460, 372 N.E.2d 656 (1978); United States ex rel. Owen v. McMann, 435 F.2d 813 (2 Cir. 1970). Similarly, the law applied by the jury must come only from the court as law-giver or else defendant does not receive a fair trial. A reference to such an outside source as a dictionary is not prejudicial per se and often constitutes harmless misconduct. State v. Suschank, 595 S.W.2d 295 (Mo.1979); State v. Amorin, 574 P.2d 895 (Hawaii 1978); United States v. Gunter, 546 F.2d 861 (10 Cir. 1976); State v. Holt, 79 S.D. 50, 107 N.W.2d 732 (1961). However, a dictionary cannot be equated with a law book, a dictionary being designed for general consumption and law books for those with special training. A jury's reference to a law book is reversible error when there is a reasonable possibility of prejudice.[6]
If there is a reasonable possibility that extraneous information considered by the jury affected its verdict, a new trial is mandated. United States v. Winkle, 587 F.2d 705 (5 Cir. 1979); Farese v. United States, 428 F.2d 178 (5 Cir. 1970).[7] It is difficult to rebut the likelihood of prejudice. State v. Wisham, supra. "... [T]he actual impact upon the jury of such evidence cannot be accurately measured or ascertained.... Consequently, it is a useless exercise even to ask jurors whether such evidence in fact affected their verdict." United States v. Vasquez, 597 F.2d 192 at 193 (9 Cir. 1979). When, as in State v. Carter, supra, the jury's legal research reveals nothing relating to the case at hand, the possibility of prejudice is slight. Here, however, the jury managed to find a Louisiana annotation which was exactly in point and sufficiently similar to the court's instruction to cause confusion. It was unfortunately not similar enough. "Had their [the jury's] information been complete and accurate, there might have been no prejudice, but, in usurping the court's authority to construe the law, they ... obtained an erroneous conception ... and it cannot fairly be said that they likely were not somewhat influenced thereby." State v. Kirk, 168 Iowa 244, 150 N.W. 91 at 96 (1914). The law book version had an error which would have required reversal if given by the court. State v. Lentz, supra; State v. Dardar, 353 So.2d 713 (La.1977). Certainly, no lesser standard can be applied to the law ferreted out by the jury than would be applied to that given by the court. There is more than the possibility of prejudice, and a new trial is necessary.
For the foregoing reasons, defendant's conviction and sentence are vacated, and the matter is remanded for a new trial.
REVERSED AND REMANDED.
NOTES
[*] Judges Cecil C. Cutrer, Jimmy M. Stoker, and Ned E. Doucet, Jr., of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon and Associate Justices Calogero, Dennis and Watson.
[1] LSA-R.S. 15:470 provides:

"No juror, grand or petit, is competent to testify to his own or his fellows' misconduct, or to give evidence to explain, qualify or impeach any indictment or any verdict found by the body of which he is or was a member; but every juror, grand or petit, is a competent witness to rebut any attack upon the regularity of the conduct or of the findings of the body of which he is or was a member."
[2] "In order to convict the Defendant of the offense charged you must find beyond a reasonable doubt that he had a specific intent to kill or to inflict great bodily harm. Thus, if you find that the Defendant was in such an intoxicated condition that he did not have the specific intent to kill or to inflict great bodily harm, you must find the Defendant not guilty...." (Tr. 344).
[3] "... unless it further appeared that he first resolved to kill the decedent and afterward drank to extreme intoxication and then carried out his former intention.11 * * *

11 State v. Kraemer, 49 La.Ann. 766, 22 So. 254, 62 A.S.R. 664." 1916 Edition of Volume 13 of Ruling Case Law at page 719. Defense Proffer # 1.
[4] The jury, examined enmasse, also said they thought the instruction given was the same as that in the book.
[5] The other assignments of error lack merit and will not be considered.
[6] Where a jury examines law books during their deliberations, a defendant cannot receive a fair trial based upon the court's instructions as he is entitled to do. Noll v. Lee, 34 Cal.Rptr. 223, 221 Cal.App.2d 81 (1963). There is "... no rule of law that would permit trial jurors to procure statutes or other law books and base their judgment upon such provisions as they might discover, rather than upon the instruction of the court." Harris v. State, 24 Neb. 803, 40 N.W. 317 at 319 (1888). As early as 1914, the Supreme Court of the State of Washington stated that: "All the cases we have been able to find hold it to be prejudicial error or misconduct requiring a new trial for a jury to consult law books while deliberating on their verdict." Bouton-Perkins Lumber Co. v. Huston, 81 Wash. 678, 143 P. 146 at 147, (1914). When a law book in the jury room is open to a pertinent section, there is prejudicial error. Demaray v. Ridl, 249 N.W.2d 219 (N.D. 1976).
[7] In Paz v. United States, 462 F.2d 740 (5 Cir. 1972) an evidentiary hearing was ordered when books concerning drug traffic were present in the jury room and defendants were on trial for narcotics violations. On remand the convictions were affirmed because there was no reasonable possibility that the verdict was affected. Rodriguez Y Paz v. United States, 473 F.2d 662 (5 Cir. 1973).