469 So.2d 1083 (1985)
STATE of Louisiana, Appellee,
v.
Julian CANTU, Appellant.
No. 16951-KA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1985.
*1084 Kidd and Kidd by M. Dale Peacock, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Tommy J. Adkins, Dist. Atty., Dan J. Grady, III, Asst. Dist. Atty., Ruston, for appellee.
Before MARVIN, SEXTON and NORRIS, JJ.
SEXTON, Judge.
Defendant, Julian "Jay" Cantu, was charged by bill of information with the offense of indecent behavior with a juvenile, in violation of LSA-R.S. 14:81. After a trial, a six person jury returned a verdict of guilty of attempted indecent behavior with a juvenile. Subsequently, Cantu was sentenced to two and one-half years at hard labor. The defendant now appeals, urging reversal of his conviction and sentence on the basis of four assigned errors. Having determined that one of defendant's complaints is meritorious, we reverse his conviction and sentence and remand for a new trial.
On the evening of February 17, 1984, the defendant and his wife, Teresa, traveled with her sister, Brenda Martin, Mrs. Martin's eight year old daughter, and Mrs. Martin's boyfriend, Maxwell Green, from Ruston, Louisiana to have dinner in Monroe, Louisiana. When they arrived back in Ruston later on that evening, the child was asleep, and the Cantus suggested that she should spend the night with them.
At the Cantu residence, the child slept with Mrs. Cantu, who was then very near the end of her pregnancy. The defendant slept elsewhere in the house, but entered the bedroom somewhere near dawn and got into bed with Teresa and her niece. At this point, the alleged offensive touching of the child occurred.
Later, the child told her mother of the incident that had transpired the night before. Subsequently, the criminal prosecution of the defendant ensued.

Assignment of Error No. 1
In this assignment, defendant avers that the trial court erred in refusing to grant defendant's motion for new trial. In this motion, defendant alleged that the jurors in his trial received extrajudicial information pertaining to his criminal history during the course of the trial, thus rendering them impartial and denying him a fair trial. We agree.
Julian Cantu had previously been convicted in Texas of the rape of his 17 year old stepdaughter. Evidence of this prior conviction was ruled inadmissible at trial after a defense objection based on State v. Prieur, 277 So.2d 126 (La.1973), was sustained.
Since this was a noncapital case, sequestration of the jury was not mandatory until the court gave the jury its charge. See LSA-C.Cr.P. Art. 791. Consequently, during the lunch break on the second day of trial, one of the jurors had lunch with her daughter. While conversing, the daughter told the juror that Cantu had prior criminal *1085 involvement. The juror, Mrs. Singleton, then reported this fact back to the other jury members.
Under statutory law, no juror may testify to his own or to a fellow juror's misconduct, or give evidence to impeach any verdict found by the jury of which he is a member. However, every juror, grand or petit, is a competent witness to rebut any attack upon the regularity of the conduct or of the findings of the body of which he is or was a member. LSA-R.S. 15:470.
The jurisprudence has, however, carved out an exception to the rule that jurors are incompetent to testify. An exception to the rule exists where there is an unauthorized communication or overt act by a third person which creates an extraneous influence on the jury. State v. Sinegal, 393 So.2d 684 (La.1981). The prohibition contained in LSA-R.S. 15:470 must also give way when there is a reasonable possibility that the defendant's constitutional right to a fair trial has been violated by juror misconduct.[1]State v. Graham, 422 So.2d 123 (La.1982). State v. Sinegal, supra; Durr v. Cook, 589 F.2d 891 (5th Cir.1979), vacating State v. Durr, 343 So.2d 1004 (La.1977); State v. Morris, 457 So.2d 119 (La.App. 2d Cir.1984).
Extraneous influences invalidate the jury's verdict unless it can be shown that their effect was harmless. Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959); Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892); State v. Sinegal, supra; State v. Carter, 363 So.2d 893 (La.1978).
In Remmer v. United States, 350 U.S. 377, 76 S.Ct. 425, 100 L.Ed. 435 (1954), the United States Supreme Court stated:
In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of all the parties. (Emphasis supplied)
See also, State v. Wisham, 371 So.2d 1151 (La.1979), appeal after remand, 384 So.2d 385 (La.1980); State v. Marchand, 362 So.2d 1090 (La.1978). As State v. Sinegal, supra, explained, this presumption of prejudice is difficult to rebut. If there is a reasonable possibility that the extraneous information was considered by the jury and affected its verdict, a new trial is mandated. United States v. Winkle, 587 F.2d 705 (5th Cir.1979), U.S. cert. denied, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979); Farese v. United States, 428 F.2d 178 (5th Cir.1970).
At the new trial hearing, the jurors and alternate juror each testified. Mrs. Singleton testified that her daughter told her, "Mama, you know he's guilty, he's wanted." She stated that at that point, she told her daughter that she could hear no more. Mrs. Singleton stated that after lunch, she went back to the jury room and announced that she "... would like to know more about this fellow. I hear he's wanted in another state." According to Mrs. Singleton, no one responded, and the subject was dropped from the conversation.
Helen Lindsay, also a juror, testified that one of the jurors was having lunch downtown and overheard that Mr. Cantu was on *1086 probation from another state, and that the cause of the probation concerned a similar incident. Mrs. Lindsay testified that the jurors did not discuss the information among themselves but that everyone heard. She said this incident occurred after lunch on Tuesday, the last day of the trial.
The juror Alice Davis also testified that she was unaware of Cantu's prior criminal record until "one of the ladies came back from lunch and had heard that there was a similar thing that had happened in Texas." Another juror, Leonard Campbell, stated that he remembered that one of the jurors asked if anyone had ever heard of the defendant's being wanted in another state. Mr. Campbell thought that the incident occurred on the first day of the trial when the jury was selected, but remembered that the remark elicited no response by the other jurors.
Jean Pruitt, the fifth juror to testify, stated that she learned of another offense, which was supposedly committed by Mr. Cantu, when the jurors were in the jury room. She stated that Mrs. Singleton said that, "He [the defendant] had been tried or somehad got in a similar situation like he [sic] in now," and that the other "incident" occurred somewhere in Texas. Like the other jurors, she stated that the jury members did not discuss the news among themselves. Hattie Lewis, another juror, testified that she only heard Mrs. Singleton say that she heard some news then she "tuned her out."
The alternate juror, Mrs. James Stewart, who did not participate in the jury's final deliberations, also testified that she learned during the course of the trial of another crime attributed to Cantu. She stated that when Mrs. Singleton came back from lunch on Tuesday, she told the other jurors that Cantu was wanted in Texas.
The evidence clearly shows, then, that a juror received extraneous information about defendant's prior criminal history which was inadmissible at his trial on the instant offense, and that the information was subsequently related to the other jurors prior to their deliberation.
It is essential that all facts considered by the jury be produced in the courtroom with the full protection of the defendant's rights to confrontations and due process. Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965); Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); United States v. Howard, 506 F.2d 865 (5th Cir. 1975); United States, ex rel. Owen v. McMann, 435 F.2d 813 (2nd Cir.1970). The influence of this information on the jury without the benefit of their explanation of their mental thought processes is, of course, insusceptible of measurement. In Sinegal, supra, the court quoting United States v. Vasquez, 597 F.2d 192 at 193 (9th Cir.1979), explained that "... the actual impact upon the jury of such evidence cannot be accurately measured or ascertained.... Consequently, it is a useless exercise even to ask jurors whether such evidence in fact affected their verdict."
Nevertheless, we have little difficulty in concluding that the presumption of prejudice existing under these facts was not overcome by the state. In this case, the extraneous communication deprived the defendant of his constitutional and statutory right to an impartial jury verdict based solely on the evidence presented at his trial. Since we find reversible error in this assignment, we do not reach the merits of appellant's other three contentions.
For the above stated reasons, the defendant's conviction and sentence is reversed and the cause remanded for a new trial in accordance with law.
REVERSED AND REMANDED.
NOTES
[1] As noted in State v. Graham, 422 So.2d 123 (La.1982), there is a distinction in the burden of proof depending on the internal or extraneous nature of the influence upon the jurors. Any unauthorized communication by a non-juror with a juror during the trial or deliberations about the matter is deemed presumptively prejudicial. State v. Wisham, 371 So.2d 115) (La. 1979); State v. Marchand, 362 So.2d 1090 (La. 1978). However, to obtain an evidentiary hearing when defendant's claim is based upon allegations of juror misconduct, an accused must make well pleaded allegations that such misconduct violated his constitutional right to due process, to confront and cross-examine witnesses, or to a trial by a fair and impartial jury. After receipt of this evidence, a new trial is warranted upon a showing that a constitutional violation occurred and that a reasonable possibility of prejudice exists. Durr v. Cook, 589 F.2d 891 (5th Cir.1979), vacating State v. Durr, 343 So.2d 1004 (La.1977).