NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-1152


STATE OF LOUISIANA

VERSUS

CASEY VIDRINE


**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 06-K-3134-A
HONORABLE JAMES P. DOHERTY, JR., DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Marc T. Amy, Judges.

AFFIRMED WITH INSTRUCTIONS.

Earl B. Taylor
District Attorney
Alisa Ardoin Gothreaux
Assistant District Attorney
P. O. Drawer 1968
Opelousas, LA 70571-1968
(337) 948-0551
Counsel for Appellee:
    State of Louisiana

Edward K. Bauman
Louisiana Appellate Project
P. O. Box 1641
Lake Charles, LA 70602-1641
(337) 491-0570
Counsel for Defendant/Appellant:
    Casey Vidrine

**DECUIR, Judge.**

Defendant, Casey Vidrine, was charged with second degree murder. Defendant was found guilty by a jury of the responsive verdict of manslaughter and sentenced to twenty-five years imprisonment, with credit for time served.

Defendant has perfected a timely appeal, and asserts three assignments of error:

(1) The evidence was insufficient to sustain Casey Vidrine's manslaughter conviction.

(2) The trial court erred in failing to grant Casey Vidrine's Motions for Mistrial.

(3) The sentence imposed upon Casey Vidrine is constitutionally excessive.

### FACTS

A little before midnight on June 17, 2006, Defendant, dressed in Army camouflage, in full combat regalia including a M4 Bushmaster, semiautomatic rifle, loaded with thirty live rounds, went to the house of a former girlfriend, Leona Harrington. The victim, Timothy Brown, Jr. (T.J.), was a friend of the family and an employee of Ms. Harrington's father. The victim was spending the night and discovered Defendant in the house with the rifle. He ran to awaken Harrington's parents. Defendant left the house, but when the victim came out of the house, Defendant shot him once in the stomach. Defendant then fired a second round at the house when the family attempted to go out to help the victim. The victim died as a result of the gunshot wound.

### ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent; however, the sentencing minutes indicate Defendant's twenty-five year sentence was imposed without benefit of parole. The sentencing transcript

contains no restriction on parole. When the transcript and court minutes conflict, the transcript prevails. *State v. Colton*, 07-252 (La.App. 3 Cir. 10/31/07), 968 So.2d 1239, *writ denied*, 07-2296 (La. 4/25/08), 978 So.2d 364. Additionally, we note there is no restriction on parole eligibility required by La.R.S. 14:31. Thus, the trial court is instructed to delete the provision in the sentencing minutes that states that Defendant's sentence is to be without benefit of parole.

## ASSIGNMENT OF ERROR NUMBER 1

At trial Defendant asserted the affirmative defense of a justified homicide, self-defense to the charge of second degree murder. In brief to this court, he argues that the State failed to meet its burden of proving beyond a reasonable doubt that his act was not committed in self-defense. Although, in brief to this court, Defendant asserts that there was insufficient evidence to sustain a verdict of manslaughter, what he actually argues is that he acted in self-defense. The Louisiana Supreme Court has stated that a justification defense is a policy consideration, and not based on the non-existence or the insufficiency of any essential element of the offense. *See State in the Interest of M.L.*, 95-45 (La. 9/5/95), 660 So.2d 830.

Our review of the record reveals that while Defendant was convicted of the responsive verdict of manslaughter, the evidence did not support a verdict of manslaughter, but it did support a verdict for second degree murder. In *State ex rel. Elaire v. Blackburn,* 424 So.2d 246 (La.1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432 (1983), the supreme court held that compromise verdicts are permissible, so long as the evidence supports either the verdict given or the original charge.

In a homicide case, when an accused raises the claim of self-defense, the State bears the burden of proving beyond a reasonable doubt that the killing was not in self-

2

defense. *State v. Richards,* 06-1553 (La.App. 3 Cir. 5/2/07), 956 So.2d 160, *writ denied*, 07-1129 (La. 12/14/07), 970 So.2d 529. To determine whether the act that resulted in the victim's death was justifiable, it is necessary to consider whether the accused had a reasonable belief that he was in immediate danger of death or great bodily harm and whether the killing was necessary to prevent the death or great bodily harm. La.R.S. 14:20. Defendant asserts that the State failed to meet its burden of proving beyond a reasonable doubt that his actions were not committed in self-defense.

The evidence in the record demonstrated beyond a reasonable doubt that Defendant's act of shooting the victim contained all the elements of second degree murder and was not committed in self-defense. There was no testimony or physical evidence introduced that indicated Defendant could have developed a reasonable belief that he was in immediate danger of death or great bodily harm and that the shooting was necessary to prevent death or great bodily harm. Defendant's own testimony indicated that he was not afraid of T.J., and that there had not been any physical altercations between the two men, nothing beyond words. Even though Defendant stated he knew there was a gun cabinet in the living room, he gave no reason as to why he believed T.J. was going for a gun. In fact, testimony established that T.J. immediately ran to the Harrington's bedroom door and began banging on the door, loud enough to awake the rest of the family, and Defendant ran out of the house.

The State established beyond a reasonable doubt that Defendant did not shoot the victim in self-defense. We find that there is no merit in this assignment of error.

3

<u>                    </u>ASSIGNMENT OF ERROR NUMBER 2

As his second assignment of error, Defendant asserts that the trial court erred when it did not grant any of the three motions for mistrial made during the course of the trial.

Louisiana Code of Criminal Procedure Article 775 provides:

> A mistrial may be ordered, and in a jury case the jury dismissed, when:
>
> (1) The defendant consents thereto:
>
> (2) The jury is unable to agree upon a verdict;
>
> (3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
>
> (4) The court finds that the defendant does not have the mental capacity to proceed;
>
> (5) It is physically impossible to proceed with the trial in conformity with law; or
>
> (6) False statements of a juror on voir dire prevent a fair trial.
>
> Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771. A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.

A trial court's ruling denying a mistrial will not be set aside absent an abuse of discretion. *State v. Narcisse,* 426 So.2d 118 (La.1983), *cert. denied,* 464 U.S. 865, 104 S.Ct. 202 (1983).

**<u>Motion for mistrial number 1:</u>**

Defendant's first motion for mistrial involved other crimes evidence. Defendant asserts an inadvertently made statement which referred directly to "[a]nother crime committed or alleged to have been committed by the defendant as

4

to which evidence is not admissible" was prejudicial to his case. La.Code Crim.P. art. 770(2).

At the trial, Jennifer Bridges, supervisor for the 9-1-1 call/help system in St. Landry Parish, testified that on the night of the shooting, 9-1-1 received several calls regarding the incident at the Harringtons' residence. She stated that besides Defendant's phone calls to 9-1-1, Leona Harrington called and that "[o]ne of my call takers took the initial call from Ms. Harrington stating that her ex-boyfriend, Casey Vidrine, had shot a guy in the stomach and shot her little sister in the ear with an M 16."

Defendant immediately objected and moved for a mistrial. The trial court denied the motion, stating:

> The reason for mistrial is denied [sic] is that the testimony of this witness was she was reporting as to the information that was called in to her by Ms. Leona Harrington, I think it was, and not that another crime was perpetrated on Ms. Harrington. For that reason, because she was relating what's in the report and the substance of the statement that was made, the Court is not going to grant your mistrial. The Court will admonish the jury that they are to disregard any testimony concerning someone being shot in the ear with an M16.

Louisiana Code of Criminal Procedure Article 771, in pertinent part, provides:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
>
> . . . .
>
> (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of 770.

Louisiana Code of Criminal Procedure Article 770(2) provides that a mistrial shall be granted when a remark or comment is made referring to other crimes, of which the evidence would have been inadmissible. In brief, Defendant argues that the inadvertent admission "made it appear that Casey tried to injure, or perhaps kill, more than one person"; accordingly, the statement was prejudicial. To determine whether a mistrial was warranted, this court should consider whether the statement was deliberately elicited, or whether it was responsive to the question, and whether the witness purposely made the statement in order to prejudice the defendant. *State v. Jones,* 41,299 (La.App. 2 Cir. 11/9/06), 942 So.2d 1215, *writ granted, in part, writ denied, in part*, 06-3025 (La. 8/31/07), 963 So.2d 381 and 06-2905 (La. 8/31/07), 963 So.2d 382 (the part granted was with respect to the denial of diminution of sentence). However, the erroneous admission of other crimes evidence is subject to a harmless error analysis. *Id.*

In brief, Defendant admits that the State did not purposefully elicit the testimony, but that the statement was made in response to the State's question regarding the initial call for help. There had already been testimony that Defendant had fired once at the house when Ms. Harrington's sister and mother went outside in an attempt to help the victim. Evidence that he fired at the people who were attempting to help the victim, which resulted in injury, could be construed as prejudicial since Defendant's defense to the charge of second degree murder was that he acted in self-defense. However, what prejudice that may have occurred was harmless in this case. An error is harmless if the verdict rendered was surely unattributable to the error. *State v. Johnson,* 94-1379 (La. 11/27/95), 664 So.2d 94. The jury did not find Defendant guilty of second degree murder, but rather the lesser

6

verdict of manslaughter. Obviously, the inadvertent comment did not prejudice Defendant's claim of justification.

**Motion for mistrial number 2:**

Defendant's second motion for a mistrial again involved Ms. Bridges. Following her testimony, she was seen outside the courtroom during a break from trial, talking to three of the jurors. While it was subsequently determined that the conversations with the three jurors were innocuous--the weather, her shoes, and whether she knew a relative of one of the jurors who was a 9-1-1 operator in another city--because she failed to recall the substance of one of the conversations, Defendant argues that "her memory lapse indicates that perhaps she may have had further conversations with the jurors that she may not recall. In the interest of justice, a mistrial was warranted."

In *State v. Adams,* 30,815, pp. 6-7 (La.App. 2 Cir. 6/24/98), 715 So.2d 118, 121-22, *writ denied*, 98-2031 (La. 3/19/99), 739 So.2d 774, the second circuit stated:

> When no mandatory grounds for mistrial are present, La.C.Cr.P. art. 770, mistrial is discretionary upon a showing that "prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial." La.C.Cr.P. art. 775. Mistrial is a drastic remedy and proper only when misconduct deprives the defendant of any reasonable expectation of a fair trial. *State v. Sepulvado*, 359 So.2d 137 (La.1978); *State v. Baker,* 28,152 (La.App. 2 Cir. 5/8/96), 674 So.2d 1108, *writ denied* 96-1909 (La.12/6/96), 684 So.2d 925. Whether prejudice has resulted lies in the sound discretion of the District Court. *State v. Banks,* 96-2227 (La.4/18/97), 692 So.2d 1051.
>
> In a criminal case, any private communication, contact or tampering directly or indirectly with a juror during a trial about the matter pending before the jury is deemed presumptively prejudicial. *State v. Charles, supra* [377 So.2d 344 (La.1979)]. However, not every contact between a juror and a witness will result in mistrial; prejudice must be established. *State v. Day*, 414 So.2d 349 (La.1982).

7

In *Adams*, the victim's mother chanced upon a co-worker at the courthouse. The mother was present for the trial of the man who killed her son. The co-worker subsequently was picked for the jury. The accused's father observed the two women talking prior to *voir dire.* The trial court questioned the two and it was determined their conversation consisted of explanations as to why each of them was at the courthouse that day. The second circuit notes that the trial court did not find prejudice:

> [B]ut out of abundant caution [the trial court] removed Ms. Benton from the jury. The defense moved for mistrial, which the court denied, giving the defense instead several options for filling Ms. Benton's place. The defense agreed to let one alternate juror take her place, but reserved an objection. Adams now contends that he suffered from "general prejudice," that the contact between Mrs. Chisley and Ms. Benton "possibly" tainted the entire jury, and that allowing the alternate to serve undermined his strategic use of peremptory challenges.
>
> Despite defense counsel's argument to the District Court and to this court that Mrs. Chisley related certain facts of the case to Ms. Benton, this was not substantiated by either conversant. It was also not corroborated by the defendant's mother. The talk appears to have been limited to why the two ladies--who both work for the school board--were present in the court house. This is not the extremely prejudicial contact shown in *State v. Charles, supra,* or in *State v. Cantu*, 469 So.2d 1083 (La.App. 2 Cir.1985). Rather, it was innocuous and did not affect the trial at all. *See, State v. Ross*, 95 1240 (La.App. 1 Cir. 5/10/96), 674 So.2d 489; *State v. Hawkins*, 496 So.2d 643 (La.App. 1 Cir.1986), *writ denied* 500 So.2d 420 (1987).

The reported discussions between Ms. Bridges and the three jurors indicated they did not discuss any facts of the case. The trial court questioned Ms. Bridges extensively as to whether she talked to any other juror besides the three reported. Whether Ms. Bridges may have had conversations with any other juror is simply speculation. No prejudice was shown in this case.

8

**Motion for mistrial number 3:**

Finally, Defendant argues that he suffered serious prejudice when, during rebuttal testimony, Jasper Lavergne testified that he had personally heard Defendant make threats to kill the victim. The State then asked whether he now thought that Defendant was serious in his threats. The witness answered, "Yes--I do." Defendant immediately objected to the statement, following which the trial court sustained the objection and admonished the jury to disregard the testimony.

Defendant argues that "[a]lthough not an expert witness, the witness's opinion invaded the province of the jury and severely prejudiced Casey Vidrine's defense." Defendant had testified that he had no animosity toward T.J., such that he would have told someone he wanted him dead. However, as noted in brief by the State, it is the jury's job to weigh the credibility of the witnesses, and the jury can accept or reject in whole or in part their testimonies. *State v. Crawford,* 03-1494 (La.App. 5 Cir. 4/27/04), 873 So.2d 768, *writ denied,* 04-1744 (La. 5/6/05), 901 So.2d 1083. The jury did not convict Defendant of a crime that required the element of specific intent to kill or inflict great bodily harm. There was obviously no prejudice as a result of the statement. Although there was no evidence to support a conviction of manslaughter, the jury still chose to convict Defendant of the lesser offense rather than second degree murder.

As discussed above, a mistrial is a drastic remedy and when not mandated by statute, mistrial is warranted only when there is substantial prejudice to the accused. *State v. Vincent*, 07-90 (La.App. 5 Cir. 10/16/07), 971 So.2d 363. In the matter currently before this court, we cannot say the trial court abused its discretion when it denied each of the three motions for mistrial. Defendant has not shown how, in each

9

case, the failure to grant his motions for mistrial affected the outcome of the trial to his detriment. There is no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER 3

For his final assignment of error, Defendant argues that his sentence of twenty-five years at hard labor is constitutionally excessive under the circumstances of his case. A conviction of manslaughter may result in imprisonment for up to forty years at hard labor. La.R.S. 14:31(B).

> The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. "'[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.'" *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook,* 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Whatley*, 06-316, pp.4-5 (La.App. 3 Cir. 11/2/06), 943 So.2d 601, 605, *writ denied*, 06-2826 (La. 8/31/07), 962 So.2d 424.

We cannot say that the trial court abused its vast discretion when it sentenced Defendant to a little more than one half of the maximum sentence he could have received in this case. Under the guise of being a military man, Defendant went to an ex-girlfriend's house at midnight with a rifle and ninety rounds of ammunition. There was no testimony that indicated he had any reason to be in fear of death or serious bodily harm at the hands of the victim. According to his own testimony he had

10

already left the house when the victim came out. He testified it was dark and there were no outside lights on. Accordingly, he could have made an escape into the dark, even if the victim were carrying a weapon. As noted by the trial court, Defendant shot into the house in order to keep the occupants inside while he made his escape, thereby endangering the lives of the others. While the evidence did not support a conviction for manslaughter, the jury convicted Defendant of the lesser offense of manslaughter, thus relieving Defendant of facing a lifetime of imprisonment.

There is no merit to this assignment.

## DECREE

For the foregoing reasons, the Defendant's conviction and sentence are affirmed. However, the trial court is instructed to delete the provision in the sentencing minutes which states that the Defendant's sentence is to be without benefit of parole.

**AFFIRMED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.